**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Judy A. WILEY–DUNAWAY,
Defendant–Appellant.**

No. 94–5077.

United States Court of Appeals,
Fourth Circuit.

Argued July 14, 1994.

Decided Nov. 15, 1994.

**ARGUED:** C. Cooper Fulton, Asst. Federal Public Defender, Charleston, WV, for appellant. Sharon Mullen Frazier, Asst. U.S. Atty., Huntington, WV, for appellee. **ON BRIEF:** Hunt L. Charach, Federal Public Defender, Charleston, WV, for appellant. Rebecca A. Betts, U.S. Atty., Huntington, WV, for appellee.

Before NIEMEYER and MICHAEL, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

Vacated and remanded by published opinion. Judge NIEMEYER wrote the opinion, in which Judge MICHAEL and Senior Judge CHAPMAN joined.

## OPINION

NIEMEYER, Circuit Judge:

■ Following Judy Wiley–Dunaway's guilty plea to one count of dealing in counterfeit securities in violation of 18 U.S.C. § 513(a), the District Court for the Southern District of West Virginia sentenced her to imprisonment for 15 months to run consecutively to the sentences she was currently serving for offenses committed in the Virgin Islands involving similar but separate conduct. Appealing her sentence, Wiley–Dunaway contends that the district court, in sentencing her, failed to apply U.S.S.G. § 5G1.3(c) (requiring a sentence "to run consecutively to the prior undischarged term of imprisonment *to the extent necessary to achieve a reasonable incremental punishment* for the instant offense"). Because the district court did not apply U.S.S.G. § 5G1.3(c), we vacate the sentence and remand for resentencing without suggesting the appropriate sentence.

From April 1989 to January 1991, Wiley–Dunaway embezzled at least $54,883 while serving as a financial manager for Women and Employment, Inc., in Charleston, West Virginia. When company officials discovered the embezzlement, they fired Wiley–Dunaway and notified law enforcement officials. Wiley–Dunaway fled West Virginia and took up residence in the Virgin Islands, where, under an assumed name and a false social security number, she obtained new employment as an office manager. While in the Virgin Islands, Wiley–Dunaway embezzled another $52,279 before she was arrested on May 17, 1992. She pled guilty in the District of the Virgin Islands to using a false social security number in violation of 42 U.S.C. § 408 and to unauthorized use of an access device in violation of 18 U.S.C. § 1029. She was sentenced to 21 months imprisonment, a

sentence that expired on April 8, 1994. Wiley–Dunaway also pled guilty to one Virgin Islands territorial offense of embezzlement for which she was sentenced to a 60–month term of imprisonment to run concurrently with the 21–month federal sentence. She became eligible for parole on the territorial sentence in May 1994, but she has not been granted parole.

While Wiley–Dunaway was serving her sentences for the Virgin Islands convictions, a federal grand jury in the Southern District of West Virginia indicted her for making and uttering counterfeit securities in connection with her earlier embezzlement from the West Virginia company. On November 15, 1993, she pled guilty in West Virginia to a one-count information charging her with a violation of 18 U.S.C. § 513(a).

In anticipation of sentencing, the probation officer prepared a presentence report finding that the offense level for Wiley–Dunaway was 11 and her criminal history category was III, which mandates a sentencing range of 12 to 18 months imprisonment. Although Wiley–Dunaway did not object to any of the factual findings contained in the presentence report, she did argue that, in sentencing her, the court should apply U.S.S.G. § 5G1.3(c) and impose a consecutive sentence only to the extent necessary to achieve a "reasonable incremental punishment" which, she argues, is three months.

At sentencing, the district court imposed a 15–month sentence of imprisonment to run consecutively to the 21–month federal sentence imposed by the District of the Virgin Islands. In doing so, the district court did not address Wiley–Dunaway's objection to the presentence report that U.S.S.G. § 5G1.3(c) should be applied. The court explained:

> One of the things the Court has to consider in this case is whether to make the sentence concurrent or consecutive, and if consecutive as opposed to concurrent, how much time is necessary to impose in a sentence appropriate to this crime and considering the defendant's past criminal record.
>
> As everyone's aware here, within a rather short period of time, Ms. Wiley–Dunaway has committed three embezzlements,

and the amounts are not insubstantial. She was given a great deal of trust each time, and the most recent loss was $54,000. The total loss is something over $107,000. And I might say that previous sentences just didn't seem to solve the problem insofar as getting the defendant's attention.

> I'm impressed with the letters that I've received and I'm aware that her family situation has changed, and having a child no doubt does make a real difference in what her goals and aspirations might be in the future. But I also have to consider the serious crimes here.
>
> In doing so, I choose to impose a consecutive sentence in this case to the time that she is previously serving. I impose a consecutive sentence of 15 months to the time already imposed, plus a three-year supervised release term.

At the time of sentencing on January 24, 1994, Wiley–Dunaway had been in custody 20 months for her Virgin Islands offenses, and her 21–month federal sentence was due to expire on April 8, 1994.

Section 3584 of Title 18 provides that when a district court imposes a sentence on a defendant who is subject to an undischarged term of imprisonment, "the terms may run concurrently or consecutively." 18 U.S.C. § 3584(a). In determining whether to impose a term concurrently or consecutively, the court must consider the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3584(b). Among the factors required for consideration by § 3553(a) are the range and nature of sentence established by the United States Sentencing Guidelines that are in effect at the time of the sentencing. 18 U.S.C. § 3553(a)(4). And § 3553(b) directs that the court "shall impose" a sentence within the range provided by the Sentencing Guidelines unless the court finds that an aggravating or mitigating circumstance exists which was not adequately taken into account by the Sentencing Commission in formulating the guidelines.

United States Sentencing Guideline § 5G1.3, addressing the imposition of a sentence on a defendant who is at the time subject to an undischarged term of imprisonment, describes three circumstances in which that guideline applies. Subsection (a) applies

if the instant offense was committed while the defendant was serving a term of imprisonment; subsection (b) applies when subsection (a) does not apply and the undischarged term was fully considered in determining the sentence for the instant offense; and subsection (c) applies to any other case where the defendant is sentenced while simultaneously subject to an undischarged term of imprisonment. Since the West Virginia offense, the offense before us, was committed before the offense that was committed in the Virgin Islands and the sentence for the instant offense fails to take into account the subsequent offense in the Virgin Islands, subsection (c) applies. It provides:

> (Policy Statement) In any other case, the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense.

U.S.S.G. § 5G1.3(c). According to Application Note 3, the "reasonable incremental punishment" referred to in § 5G1.3(c) should be determined by adding to the undischarged sentence an amount that would make the combined sentence approximate that which would be imposed if the defendant were sentenced for the two offenses at the same time. Application Note 3, as amended November 1, 1993, states that: .

> To the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under § 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time. It is recognized that this determination frequently will require an approximation. Where the defendant is serving a term of imprisonment for a state offense, the information available may permit only a rough estimate of the total punishment that would have been imposed under the guidelines. Where the offense resulting in the undischarged term of imprisonment is a federal offense for which a guideline

determination has previously been made, the task will be somewhat more straightforward, although even in such cases a precise determination may not be possible.

If the "reasonable incremental punishment" that is calculated by the method described in Application Note 3 turns out to be less than the minimum guideline range calculated separately for the instant offense, then the minimum sentence for the instant offense may be imposed as the "reasonable incremental punishment," and no downward departure is required. The Application Note explicitly states that:

> [T]his methodology does not, itself, require the court to depart from the guideline range established for the instant federal offense. Rather, this methodology is meant to assist the court in determining the appropriate sentence (e.g., the appropriate point within the applicable guideline range, whether to order the sentence to run concurrently or consecutively to the undischarged term of imprisonment, or whether a departure is warranted).

This Application Note is further corroborated by Illustration D, which provides:

> The applicable guideline range for the instant federal offense is 24–30 months. The court determines that a total punishment of 36 months' imprisonment would appropriately reflect the instant federal offense and the offense resulting in the undischarged term of imprisonment. The undischarged term of imprisonment is an indeterminate sentence with a 60–month maximum. At the time of sentencing on the instant federal offense, the defendant has served 22 months on the undischarged term of imprisonment. In this case, a sentence of 24 months [the minimum for the instant offense] to be served concurrently with the remainder of the undischarged term of imprisonment *would be the lowest sentence imposable without departure for the instant federal offense.*

(Emphasis added).

■ While it is curious that U.S.S.G. § 5G1.3(c) is introduced by the term "policy statement," suggesting the absence of any underlying "guideline" or of the weight a guideline bears, we nevertheless think it appropriate to enforce subsection (c) as if it

were a guideline, but in a manner that affords the degree of discretion spelled out by the commentary and illustrations. Any other conclusion would lead to the peculiar result that no guideline existed on the sentencing issue before us and would render both the policy statement and commentary superfluous. Since the Sentencing Commission's policy statements and commentary are generally entitled to treatment as authoritative guides with controlling weight, unless inconsistent with a statute or the Sentencing Guidelines themselves, we will give this particular provision effect as a guide to the discretion afforded by 18 U.S.C. § 3584(a). *Cf. Williams v. United States,* —— U.S. ——, ——, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992) (policy statements are "an authoritative guide" to the meaning of the Sentencing Guidelines); *Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1918, 123 L.Ed.2d 598 (1993) (commentary is to be treated like policy statements and provides "concrete guidance as to how even unambiguous guidelines are to be applied in practice").

Application of our interpretation to Wiley–Dunaway's circumstances, which is a task we leave to the district court, would in any event begin with a determination of the guideline range for the West Virginia offense, which the district court originally found to be 12 to 18 months. This was derived from a base offense level of 6; an addition of 5 points for a loss exceeding $40,000; an addition of 2 points for more than minimal planning; and a subtraction of 2 points for acceptance of responsibility—for a total offense level of 11. Combining this offense level with a criminal history category of III, the district court found Wiley–Dunaway's sentencing guideline range for the instant offense to be between 12 and 18 months. Once the range is determined for the instant offense, it would be compared to the range of sentence that would be determined if a sentence were being imposed for the instant offense and the Virgin Islands offense at the same time under U.S.S.G. § 5G1.2. Wiley–Dunaway argues that this calculation yields a maximum sentence of 24 months. If the maximum combined sentence would be 24 months, by subtracting the 21 months that Wiley–Dunaway would have served under her Virgin Islands sentence, the calculation would yield a 3–month "reasonable incremental punishment" for the instant offense, the result now urged by Wiley–Dunaway. However, the minimum range for the instant West Virginia offense is 12 months. Accordingly, the minimum sentence to which Wiley–Dunaway could have been sentenced under these assumptions, without a downward departure, is a 12–month sentence to run concurrently with the remainder of the term imposed by the District of the Virgin Islands, and consecutively thereafter. *Accord, United States v. Whiting,* 28 F.3d 1296 (1st Cir.1994); *United States v. Brewer,* 23 F.3d 1317 (8th Cir.1994); *United States v. Coleman,* 15 F.3d 610 (6th Cir.1994).

Wiley–Dunaway argues that the district court was required to depart downward from the guideline range for the West Virginia offense in order to approximate more closely the sentence she would have received had she been sentenced for both her West Virginia and Virgin Islands offenses at the same time. The only support she presents for this position is a letter written by John Steer, General Counsel to the Sentencing Commission, explaining his interpretation of U.S.S.G. § 5G1.3(c) to Probation Officer Tony Garoppolo. In the letter, Steer states that, "Occasionally, a downward departure [for the second offense] may be necessary to make this provision work properly." Letter from Steer to Garoppolo, Jan. 6, 1994, at 8. According to Steer, "This would ensure that the total punishment is not determined as an artifact of the number of months in custody before sentencing, a factor that could have been lengthened simply because of a delay in the defendant's trial or sentencing on the instant federal offense." *Id.* at 8–9.

While that position has merit, it does not dictate the result or require a downward departure in this case. Indeed, Application Note 3 to U.S.S.G. § 5G1.3(c) makes clear that the suggested methodology "does not, itself, require the court to depart from the guideline range established for the instant federal offense" but leaves significant discretion to the district court.

Our decision to remand this case for resentencing should not be read as suggesting that the district court impose any particular sentence. Although U.S.S.G. § 5G1.3 may indi-

cate that a sentence of 12 months should have been imposed to run concurrently with the remainder of the sentence imposed by the Virgin Islands courts and consecutively thereafter, that section, read in light of 18 U.S.C. § 3584(a) and Application Note 3, only requires that the district court "consider" such a sentence "to the extent practicable" to fashion a "reasonable incremental punishment." U.S.S.G. § 5G1.3 Application Note 3. *See United States v. Redman,* 35 F.3d 437, 441–42 (9th Cir.1994) (sentencing court "must attempt to calculate the reasonable incremental punishment that would be imposed under the commentary methodology," but may use another method if there is a reason to abandon the suggested penalty). Moreover, on remand, the district court retains the right to depart from this suggestion in accordance with the Sentencing Guidelines. We remand at this point simply to require the district court to fashion the "reasonable incremental punishment" in accordance with U.S.S.G. § 5G1.3(c).

*VACATED AND REMANDED FOR RESENTENCING.*