

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-19-1995

# United States v Robert Holifield

Precedential or Non-Precedential:

Docket 94-3424

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"United States v Robert Holifield" (1995). *1995 Decisions.* Paper 105.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/105

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 94-3424 & 94-3426
_____


UNITED STATES OF AMERICA

v.

ROBERT HOLIFIELD, a/k/a Jim Davis,
a/k/a Philip Sharp, a/k/a David Jones

Robert Holifield,
Appellant


_____

No. 94-3425
_____


UNITED STATES OF AMERICA

v.

ROBERT A. HOLIFIELD

Robert Holifield,
Appellant


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Nos. 94-cr-00003J,
94-cr-00011J & 94-cr-00012J)
_____


Argued January 30, 1995

Before:  SCIRICA, ROTH and SAROKIN, <u>Circuit</u> <u>Judges</u>

(Filed April 19, 1995)

KAREN S. GERLACH, ESQUIRE (Argued)
Office of the Federal Public Defender
960 Penn Avenue
415 Convention Tower
Pittsburgh, Pennsylvania 15222

    Attorney for Appellant


BONNIE R. SCHLUETER, ESQUIRE (Argued)
Office of the United States Attorney
633 United States Post Office & Courthouse
Pittsburgh, Pennsylvania 15219

    Attorney for Appellee

_____

OPINION OF THE COURT
_____


SCIRICA, <u>Circuit</u> <u>Judge</u>.


Defendant Robert Holifield pled guilty in 1994 to five counts of wire fraud in violation of 18 U.S.C. § 1343 (Supp. V 1993). The sole issue on appeal is whether the district court acted within its discretion in its application of the United States Sentencing Guidelines. We will affirm.

I.

From March 13, 1992, to June 12, 1992, Holifield engaged in a wire fraud scheme in the Middle and Western Districts of Pennsylvania. Holifield telephoned various persons, falsely representing himself to be a corporate officer of Diamond Marketing Company, V.I.P. Promotions, and other companies. After advising them they had won prizes through a sweepstakes drawing, Holifield told them that it was necessary to pay an advance fee

to cover expenses and taxes on the prize.  He then instructed them to wire the money to Western Union offices in Pennsylvania and Georgia to persons that he claimed were company associates.  The scheme caused losses to five individuals totaling more than $25,000.

Two years earlier, from December 1, 1989, through November 1, 1990, Holifield engaged in a similar scheme in the Northern District of Georgia, this time purportedly as a salesman for International Marketers, Incorporated.  Holifield also trained others to be salespersons for IMI.  Three victims in this scheme lost a total of $2,700.  The cases from the Northern District of Georgia and the Middle District of Pennsylvania were transferred to the Western District of Pennsylvania under Federal Rule of Criminal Procedure 20 and were consolidated for purposes of disposition ("the Pennsylvania charges").

At the time the Pennsylvania charges were filed, Holifield was serving a 21-month sentence for another wire fraud scheme in which he posed as an Internal Revenue Service agent during February 1993.  That charge was filed in the District of Colorado, and Holifield pled guilty in August 1993.

As we have noted, Holifield later pled guilty to five counts of wire fraud in the Western District of Pennsylvania.  The guideline range for each count was 15-21 months imprisonment.  He was sentenced to 15 months on each count, each to run concurrently and also concurrently with the remaining time on the Colorado sentence, which was four months.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231 (1988).  We have jurisdiction under 28 U.S.C. § 1291 (1988).  Our review of the construction of the Sentencing Guidelines is plenary.  United States v. Nottingham, 898 F.2d 390, 392 (3d Cir. 1990).

## II.

Under 18 U.S.C. § 3584 (1988), a sentencing court is permitted to order a defendant's sentence to run either concurrently or consecutively to another sentence imposed at the same time or to an earlier, undischarged term of imprisonment.  That discretion is subject to § 5G1.3 of the United States Sentencing Guidelines, which was promulgated in response to the statutory duty imposed upon the Sentencing Commission to include in the guidelines "a determination whether multiple sentences to terms of imprisonment should be ordered to run concurrently or consecutively."  28 U.S.C. § 994(a)(1)(D) (1988).

The government and Holifield apparently agree that § 5G1.3(c) governs this dispute.[1]  Subsection (c) provides that "the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental

---

[1].  Subsection (a) of § 5G1.3 requires consecutive sentences when the sentence is for a crime committed while the defendant was serving a term of imprisonment, or after sentencing for, but before commencing service of, such term of imprisonment. Subsection (b) applies when subsection (a) does not apply, and calls for concurrent sentences when the undischarged term of imprisonment resulted from an offense that has been fully taken into account in the determination of the offense level for the instant offense.

<u>punishment</u> for the instant offense."  U.S.S.G. § 5G1.3(c) (Policy Statement) (emphasis added).[2]  The Commentary's Application Note to subsection (c) states that a consecutive sentence is not required when reasonable incremental punishment can be achieved through the use of a concurrent sentence.  The note then explains what is meant by "reasonable incremental punishment":

> To the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under § 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time.

<u>Id.</u> § 5G1.3 (Commentary).[3]

_____

[2].  The policy statements and commentary contained in the guidelines are binding on the federal courts.  <u>See, e.g.,</u> <u>Stinson v. United States</u>, 113 S. Ct. 1913, 1919 (1993) (commentary "must be given 'controlling weight unless . . . plainly erroneous or inconsistent'" with the guidelines); <u>Williams v. United States</u>, 503 U.S. 193, 201 (1992) (policy statement serves as "an authoritative guide to the meaning of the applicable Guideline").

[3].  The Commission has provided illustrations of how § 5G1.3 is to work.  In one illustration a guideline range for the instant federal offense is 24-30 months.  The court determines that a total punishment of 36 months would appropriately reflect the instant federal offense and the offense resulting in the undischarged term of imprisonment.  The undischarged sentence is an indeterminate term of imprisonment with a 60-month maximum, of which 10 months have been served by the defendant.  In that case, according to the illustration, a sentence of 26 months imprisonment, to be served concurrently with the undischarged sentence, "would (1) be within the guideline range for the instant federal offense, and (2) achieve an appropriate total punishment (36 months)."  U.S.S.G. § 5G1.3 (Illustration A).

III.

Holifield argued, and the district court apparently agreed, that had the sentences on the Pennsylvania and Colorado charges been imposed at the same time, the maximum sentence he could have received would have been 24 months. At the time Holifield was sentenced on the Pennsylvania charges, he had served 17 of the 21 months on the Colorado offense. Thus he argued that § 5G1.3 required that his sentence on the Pennsylvania charges run no more than seven months and concurrently with his undischarged sentence, or three months and consecutively to the remaining four months of his undischarged sentence. In either case, Holifield contended that § 5G1.3 required that he serve no more total time than he would have served had he been sentenced on all the offenses at the same time (24 months). In addition, Holifield argued that any sentence resulting in a greater total punishment was an upward departure from the guidelines and required prior notice in accordance with Burns v. United States, 501 U.S. 129, 138-39 (1991). As we have noted, the district court disagreed and Holifield raises the same issues on appeal.

The government responds that Congress intended to vest district court judges with discretion to run sentences concurrently or consecutively. Although the government concedes § 5G1.3 must be considered by the district court, it claims that a strict application of that section's methodology is not necessary.

A.

Section 5G1.3 provides guidance in determining whether to run a sentence concurrently or consecutively. While it appears to permit a downward departure from the applicable guideline range to meet its objectives, it does not create a sentencing scheme in itself nor does it require a downward departure. The Commentary to § 5G1.3 states:

> Additionally, this methodology does not, itself, require the court to depart from the guideline range established for the instant federal offense. Rather, this methodology is meant to assist the court in determining the appropriate sentence (e.g., the appropriate point within the applicable guideline range, whether to order the sentence to run concurrently or consecutively to the undischarged term of imprisonment, or whether a departure is warranted).

U.S.S.G. § 5G1.3 (Commentary) (emphasis added).

As the final clause in this part of the Commentary suggests, sentencing Holifield to less than 15 months to meet the general objectives of § 5G1.3 would have been a departure from the guideline range. And although § 5G1.3 would permit a departure, the Commentary clearly states that the methodology "does not, itself, require the court to depart."[4]

This is also evident in one of the illustrations provided by the Sentencing Commission. In fact, although the

---

[4]. Holifield's sentence was within the applicable guideline range for the instant offense. The fact that the sentence resulted in a period of incarceration longer than the "total punishment" calculated under § 5G1.3 does not make it an upward departure. Thus, Holifield's argument that there was a departure requiring notice and cause is without merit.

figures are different, the illustration discusses a sentencing

situation similar to the one the district court faced here:

> The applicable guideline range for the instant federal offense is 24–30 months. The court determines that a total punishment of 36 months' imprisonment would appropriately reflect the instant federal offense and the offense resulting in the undischarged term of imprisonment. The undischarged term of imprisonment is an indeterminate sentence with a 60–month maximum. At the time of sentencing on the instant federal offense, the defendant has served 22 months on the undischarged term of imprisonment. In this case, a sentence of 24 months to be served concurrently with the remainder of the undischarged term of imprisonment would be the lowest sentence imposable without departure for the instant federal offense.

Id. § 5G1.3 (Illustration D).

With no departure from the guidelines, the defendant in

the illustration would serve a total of 46 months, even though a

total of 36 months would appropriately reflect the two offenses.

While departure may be justified in such a circumstance, we

believe that if departure was required, the Sentencing Commission

clearly would have said so.[5]

_____

[5]. In fact, this position was taken by John Steer, General Counsel to the United States Sentencing Commission, in a letter cited in Holifield's brief. Asked about downward departures in this circumstance under § 5G1.3, Steer wrote:

> Occasionally, a downward departure may be necessary to make this provision work properly. For example, where the defendant has been in state custody for a long time, a downward departure may be the only feasible way to achieve an appropriate total punishment, assuming the court wishes to employ a departure to achieve the desired objective.

The Court of Appeals for the Fourth Circuit reached the same conclusion in a remarkably similar case. In United States v. Wiley-Dunaway, 40 F.3d 67 (4th Cir. 1994), the defendant embezzled $54,883 in West Virginia before her actions were discovered. She fled to the Virgin Islands, where under an assumed name she embezzled another $52,279. She pled guilty in the Virgin Islands district court and received a 21-month sentence.[6]

After she was sentenced, the defendant was indicted for her West Virginia crimes. She pled guilty in federal court in West Virginia and received a 15-month sentence to run consecutive to the Virgin Islands federal sentence, which had less than three months remaining. The district court, in sentencing, did not address § 5G1.3.

On appeal, the Fourth Circuit followed the methodology of § 5G1.3(c). The court noted that the sentencing range for the instant offense was 12 to 18 months, and the defendant argued the maximum she could have received for the combined offenses was 24 months. Subtracting the 21-month sentence she had received for

(..continued)

Letter from John Steer, General Counsel, United States Sentencing Commission, to Tony Garoppolo, Deputy Chief U.S. Probation Officer 8 (January 6, 1994) (emphasis added).

[6]. The defendant also pled guilty to a Virgin Islands territorial offense for which she received a 60-month sentence to run concurrently with the federal sentence. At the time of sentencing for the West Virginia offenses, she had only four months remaining until she became eligible for parole for this territorial offense. United States v. Wiley-Dunaway, 40 F.3d 67, 69 (4th Cir. 1994).

the Virgin Islands federal offense, the defendant contended she could only receive a 3-month "reasonable incremental punishment" for the instant offense.  The Fourth Circuit rejected the claim, holding that:

> [T]he minimum range for the instant West Virginia offense is 12 months.  Accordingly, the minimum sentence to which Wiley-Dunaway could have been sentenced under these assumptions, without a downward departure, is a 12-month sentence to run concurrently with the remainder of the term imposed by the District of the Virgin Islands, and consecutively thereafter.

Id. at 71.  The court remanded the case to the district court, but only because it had not considered § 5G1.3 at the time of sentencing.  Id. at 71-72.

It is important to note the methodology of § 5G1.3 vests discretion in the trial judge.  It does not require a departure from the guideline range for the instant offense.  Thus, when a defendant has been in custody for a substantial amount of time and the sentencing judge chooses not to depart, his total time served may be greater than it would have been had he been sentenced for all his crimes at once.  In a letter, John Steer, General Counsel to the United States Sentencing Commission, indicated that a downward departure may be desirable when the increase is simply because of a delay in the defendant's trial or sentencing.  See Letter from John Steer, General

Counsel, United States Sentencing Commission, to Tony Garoppolo, Deputy Chief U.S. Probation Officer 8-9 (January 6, 1994).  Yet, as the Fourth Circuit noted, "While that position has merit, it does not dictate the result or require a downward departure . . . ."  Wiley-Dunaway, 40 F.3d at 71.

In this case, the sentencing court adhered to the methodology prescribed by § 5G1.3.  Discussion of the application of § 5G1.3 spans fifty pages of the transcript of the sentencing hearing, as the court and prosecution and defense counsel proceeded step-by-step through the requirements of the guideline. See App. at 95-145.  The court determined that § 5G1.3(c) applied to this case, not § 5G1.3(b), as defense counsel claimed.  Id. at 112, 114.  The court also accepted the government's position that the instant offenses required a sentence range of 15 to 21 months.  Id. at 95.  The government and defense then agreed the defendant had only four months remaining on his sentence for the Colorado offense.  Id. at 97-99, 113-114.  The parties noted it was uncertain whether, by combining the instant offenses with the Colorado offense, the total sentence would have been a maximum of 21 or 24 months.  Id. at 107, 115, 124, 142.

After those calculations, the court sentenced the defendant to 15 months on each count, to be served concurrently with each other and concurrently with the undischarged sentence on the Colorado charge.  Although the court did not resolve the issue of whether 21 or 24 months was the proper combined maximum sentence, such a precise determination was unnecessary, given that the minimum sentence of 15 months on the instant offenses,

coupled with the 17-month sentence already served, would surpass either the 21- or 24-month combined sentence.  The court noted its 15-month concurrent sentence was "the lowest possible sentence [the defendant] could have received under subsection C [of § 5G1.3].  The Court could have gone no lower except had I departed and, in fact, I see no circumstances that would have warranted departure nor have any been set forth."  Id. at 150-51.

We are satisfied that the district court fully followed the procedures suggested by § 5G1.3(c).  Although the defendant did not receive a "combined sentence of imprisonment that approximates the total punishment that would have been imposed under § 5G1.2," such a sentence could not have been imposed here without a departure from the guidelines.  As we have noted, such a departure is not required under § 5G1.3.  See discussion part III.A; § 5G1.3 (Commentary).

Furthermore, the government points out that this case demonstrates the wisdom of leaving discretion in the hands of the district court.  When Holifield pled guilty to the Colorado charge in August 1993, he chose not to disclose his illegal conduct from 1989 to 1992.  Had Holifield come forward with that information in Colorado, he could have had all the offenses combined.  Thus in this case, the increased total punishment is directly a result of a delay in the discovery of the offenses, a factor entirely in the control of the defendant.

B.

Although we find the district court followed the § 5G1.3(c) methodology, we would reach the same result here even if

the district court had considered but rejected application of that methodology.  As we have stated, the commentary to § 5G1.3 provides:  "To the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under § 5G1.2 . . . ."  (emphasis added).

The Court of Appeals for the Ninth Circuit has noted the "should consider" language of the commentary "falls somewhere between the 'may consider' language in the 1989 amendment and the 'shall impose' mandate of the 1991 version."  United States v. Redman, 35 F.3d 437, 440-41 (9th Cir. 1994), cert. denied, 115 S. Ct. 922 (1995).  The Ninth Circuit concluded this language means that a district court "may decline to impose the sentence suggested by the commentary's methodology, if it has a good reason for doing so."  Id. at 441.

> [T]he court must attempt to calculate the reasonable incremental punishment that would be imposed under the commentary methodology. If that calculation is not possible or if the court finds that there is a reason not to impose the suggested penalty, it may use another method to determine what sentence it will impose.  The court must, however, state its reasons for abandoning the commentary methodology in such a way as to allow us to see that it has considered the methodology.

Id.  We agree with this analysis and join the majority of circuits that have addressed this question in concluding that although the district court must calculate the "reasonable incremental punishment" according to the methodology, it need not

impose that penalty.[7]  Instead, the court may employ a different
method in determining the sentence as long as it indicates its
reasons for not employing the commentary methodology.

In this case, the district court went through the
methodology step-by-step with government and defense counsel
before imposing its sentence.  Furthermore, the court listed
several factors that warranted a more severe sentence.  The court
noted the defendant's prior offense "had not been fully taken
into account" in determining the offense level for the instant
convictions.  App. at 151-52.  Furthermore, the court stated most

---

[7].  See United States v. Wiley-Dunaway, 40 F.3d 67, 71-72 (4th
Cir. 1994) (citations omitted) (§ 5G1.3 "only requires that the
district court 'consider' such a sentence 'to the extent
practicable' to fashion a 'reasonable incremental
punishment.' . . .  [T]he district court retains the right to
depart from this suggestion in accordance with the Sentencing
Guidelines."); United States v. Torrez, 40 F.3d 84, 87 (5th Cir.
1994) ("[E]ven if the district court had considered this
provision, it would have been free to decline to follow the
suggested methodology."); United States v. Coleman, 15 F.3d 610,
613 (6th Cir. 1994) ("[B]ecause the methodology 'is meant to
assist the court in determining the appropriate sentence,' it
will not always be necessary to follow the precise methodology
called for under § 5G1.3 . . . since there may be circumstances
which will warrant the court in resorting to a simpler method of
achieving a result which is the practical equivalent of the more
complex computations."); United States v. Redman, 35 F.3d 437,
441 (9th Cir. 1994) ("[I]f the court finds that there is a reason
not to impose the suggested penalty, it may use another method to
determine what sentence it will impose."), cert. denied, 115 S.
Ct. 922 (1995); United States v. Johnson, 40 F.3d 1079, 1084
(10th Cir. 1994) (citation omitted) ("[C]ourts have recognized
that 'it will not always be necessary to follow the precise
methodology called for under § 5G1.3 . . . .'").  But see United
States v. Duranseau, 26 F.3d 804, 810-11 (8th Cir.) (noting if
methodology other than that in § 5G1.3 is used, the district
court must employ a departure analysis), cert denied, 115 S. Ct.
341 (1994).

of the victims were elderly and the financial hardship the defendant caused was probably "irremediable."  Id. at 152-53. Finally, the court noted the defendant's conduct was "parasitic and outrageous" and he had not shown any remorse for his actions. Id.  Thus, although the district court properly followed the § 5G1.3 methodology, we believe it also listed more than sufficient reasons for departing from that methodology if it had chosen to do so.

IV.

We hold that the sentencing court properly applied the methodology of § 5G1.3, and was within its discretion when it chose not to depart from the guideline range of sentencing. Furthermore, we conclude that the sentencing court is not bound to follow that methodology as long as it indicates the rationale for its decision.  For the foregoing reasons, we will affirm the judgment of conviction and sentence of the district court.