**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Pamela Adele Judd PUCKETT, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Marvin B. PUCKETT, Jr., Defendant–Appellant.**

**Nos. 94–5165, 94–5214.**

United States Court of Appeals, Fourth Circuit.

Submitted May 3, 1995.

Argued May 4, 1995.

Decided Aug. 4, 1995.

**1094**

**ARGUED:** Robert Cameron Stone, Jr., Askin & Associates, Martinsburg, WV, for appellant Marvin Puckett. Jean Barrett Hudson, Office of U.S. Atty., Charlottesville, VA, for appellee. **ON BRIEF:** Walter F. Green, IV, Green & O'Donnell, Harrisonburg, VA, for appellant Pamela Puckett. Robert P. Crouch, Jr., U.S. Atty., Thomas J. Bondurant, Jr., Asst. U.S. Atty., Alexander

Boone, Third Year Law Intern, Roanoke, VA, for appellee.

Before ERVIN, Chief Judge, and NIEMEYER and MOTZ, Circuit Judges.

Affirmed by published opinion. Chief Judge ERVIN wrote the opinion, in which Judge NIEMEYER and Judge MOTZ joined.

## OPINION

ERVIN, Chief Judge:

Marvin Puckett, Jr., and Pamela Puckett pled guilty to conspiring to possess with intent to distribute marijuana. Marvin Puckett also pled guilty to two counts of money laundering and to being a felon in possession of a handgun.

On appeal, Marvin challenges several aspects of his sentence. Additionally, Pamela appeals from the district court's refusal to allow her to withdraw her guilty plea. Finding no error, we affirm both convictions and sentences.

### I.

On September 14, 1993, Marvin Puckett, Jr., ("Puckett") pled guilty to multiple counts of money laundering, in violation of 18 U.S.C. §§ 1956 and 1957, and conspiring to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846. He also pled guilty to being a felon in possession of a handgun under 18 U.S.C. § 922(g). He was sentenced on February 4, 1994, to a term of 195 months on count one (conspiracy), 120 months each on counts four and five (money laundering), and 120 months on count eight (firearm possession). All three sentences are to be served concurrently.

At the time he was sentenced for these offenses, he was serving a ten-year federal sentence for a 1988 PCP conviction. On February 10, 1988, Puckett had been convicted of conspiracy to distribute and manufacture PCP. He received a ten-year suspended sentence and was released from custody on September 8, 1989. He violated parole on January 22, 1992, by possessing firearms as a

convicted felon, and his ten-year suspended sentence was reinstated. The district court ordered his sentences for the offenses at issue on this appeal to run consecutively to the ten-year sentence for the PCP conviction.

On appeal, Puckett raises several issues regarding his sentence. He argues that his most recent sentences should run concurrently with the unexpired term of the ten-year 1988 PCP sentence. He also objects to the district court's two level enhancement for obstruction of justice under § 3C1.1 of the Sentencing Guidelines. Additionally, he argues that the district court incorrectly applied Sentencing Guidelines § 2S1.1 by increasing his offense level based upon the value of marijuana involved in the conspiracy.

Puckett's wife, Pamela, also pled to conspiring to possess with intent to distribute marijuana under 21 U.S.C. § 846. Before sentencing, she submitted a motion to withdraw her guilty plea. The motion was denied, and she was sentenced to 36 months imprisonment. On appeal, Pamela argues that she should have been provided with sentencing guideline information prior to pleading guilty.[1]

## II.

■ We begin by addressing the issues raised by Marvin Puckett. Puckett alleges that the district court erred by enhancing his offense level under § 3C1.1 of the United States Sentencing Guidelines for obstruction of justice.[2] Section 3C1.1 provides for a two level increase if the defendant "willfully obstructed or impeded ... the administration of justice during the investigation, prosecution, or sentencing of the instant offense." The government must prove by a preponderance of the evidence the facts constituting obstruction of justice for sentencing purposes. *United States v. Nelson*, 6 F.3d 1049, 1054 (4th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2142, 128 L.Ed.2d 870 (1994). The government can rely on hearsay testimo-

ny to meet its burden of proof. *United States v. Roberts*, 881 F.2d 95, 105–106 (4th Cir.1989). We review a district court's finding that the defendant obstructed justice only for clear error. *United States v. Daughtrey*, 874 F.2d 213, 217–18 (4th Cir. 1989).

■ The district court found that Puckett obstructed justice by threatening Pam Goetz, a grand jury witness. FBI Agent Daniel Stiefvater testified at the sentencing hearing that he and another special agent from the Virginia State Police interviewed Goetz on June 15, 1993, in the United States Attorney's office in Charlottesville. Goetz was present with her attorney. Stiefvater testified that Goetz stated that Puckett had told her on two occasions that she "would not live to tell about it" were she to testify against Puckett. Puckett, on the other hand, denied threatening Goetz and stated that he told her "to go down there and tell the truth."

The district court made a factual determination regarding the credibility and motivation of both Goetz and Puckett. Acknowledging that Goetz lied to the grand jury, the district court nevertheless credited the FBI's statement regarding Puckett's threats to Goetz. The court found that Goetz's motive probably was fear, whereas Puckett's alleged statements to tell the truth may have been motivated by an "effort to absolve himself from the obstruction charge." The court stated: "Balancing those two factors, it seems to the court more likely, by any reasonable construction, that the version stated by Mrs. Goetz is the correct version." This finding is not clearly erroneous, and the district court's two level enhancement under § 3C1.1 was appropriate.

## III.

Puckett also argues that the district court incorrectly applied § 2S1.1(b) of the Sentenc-

---

**1.** The court granted Pamela Puckett's unopposed motion to submit her case on the briefs, without oral argument. Counsel for Marvin Puckett, however, appeared for oral argument on behalf of his client.

**2.** Since Puckett was sentenced on February 4, 1994, the 1993 Guidelines apply. *See United States v. Rogers*, 897 F.2d 134, 138 n. 9 (4th Cir.1990) ("[T]he district court is to consider the guidelines and policy statements of the Commission that are in effect on the date the offender is *sentenced*.").

ing Guidelines. Section 2S1.1(a)(1) provides that the base offense level for a conviction for money laundering under 18 U.S.C. § 1956(a)(1)(A) is 23. Section 2S1.1(b) requires that the base offense level be increased for specific offense characteristics. Finding that Puckett knew the funds were proceeds of unlawful drug activity, the district court increased Puckett's base offense level from 23 to 26 under § 2S1.1(b)(1). Puckett's offense level was increased further from 26 to 31 pursuant to § 2S1.1(b)(2)(F), because the value of the funds was more than $1,000,000.

Puckett does not contest the district court's findings with respect to the value of funds involved for purposes of § 2S1.1(b)(2)(F);[3] rather, he argues that under *United States v. Atterson,* 926 F.2d 649, 660 (7th Cir.), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2909, 115 L.Ed.2d 1072 (1991), the district court's application of § 2S1.1(b) resulted in impermissible double counting. In *Atterson,* the Seventh Circuit found that for the purposes of determining the value of the funds involved in money laundering under § 2S1.1(b)(2), including the approximate street value of the total quantity of marijuana involved in the conspiracy, in addition to the $64,036 in money orders and Western Union transfers that the defendant had received from co-defendants, was impermissible doublecounting. *Id.* at 660. Although this finding was based on the court's conclusion that Congress did not intend a defendant's sentence to be "doubly-enhanced [under § 2S1.1(b)(1) and § 2S1.1(b)(2) ] due to the fact that drugs were involved in the money laundering scheme," the court did not undertake a review of the legislative history or examine the commentary in the sentencing guidelines to substantiate its interpretation of Congressional intent. *Id.*

▪ Moreover, not only is the *Atterson* court's rationale unsupported, the court's analysis is also ambiguous. The district court in *Atterson* increased the defendant's

offense level under § 2S1.1(b)(1), because the money laundering involved narcotics. The district court then increased that level by one under § 2S1.1(b)(2)(A), because the value of drugs involved was found to be more than $100,000.[4] On appeal, the Seventh Circuit did not question the district court's application of § 2S1.1(b)(1), nor did it question that "the $64,036 representing cashier checks and Western Union transfers to [the defendant] would figure into the computation of the 'total value of funds'" under § 2S1.1(b)(2). *Id.* The court appeared to challenge the district court's use of the total value of the drugs, i.e., over $100,000, for purposes of § 2S1.1(b)(2)(A). Under the facts, however, the relationship between the $64,036 amount and the total value of drugs involved in the conspiracy is unclear, since the $64,036 appears to represent money laundered as a result of drug activity. *Id.* The opinion fails to specify whether the court considers the total value of drugs involved to be irrelevant, or merely that the total value of drugs should be subtracted from the $64,036 amount. *Id.* If the *Atterson* court's holding is, as defendant urges, that after an offense level has been enhanced under § 2S1.1(b)(1) for drug involvement, it cannot be further enhanced under § 2S1.1(b)(2) based upon the value of drugs involved in the money laundering scheme, we are compelled to disagree with this interpretation of the guidelines.

In *United States v. Curtis,* 934 F.2d 553, 556 (4th Cir.1991), we noted that "the sentencing guidelines are explicit when double counting is forbidden," and held that "if conduct falls within the applicable definitions, then it is appropriate to increase the offense level for each enhancement." *Id.* at 556 (referring to USSG § 1B1.1, Application Note 4, which states that "[t]he offense level adjustments from more than one specific offense characteristic with an offense guideline are cumulative (added together) unless the guideline specifies that only the greater (or greatest) is to be used").

---

3. Section 2S1.1(b)(2) applies if the value of the funds involved in money laundering exceeded $100,000. Under § 2S1.1(b)(2)(F), the offense level is to be increased by five levels if the value of funds is more than $1,000,000.

4. The total quantity of marijuana involved in the conspiracy was 220 pounds. This amount was multiplied by the approximate street value of $550–$750 per pound. *Atterson,* 926 F.2d at 660.

Although *Curtis* involved §§ 2B1.1(b)(4) and 3B1.1(c), its holding is applicable to § 2S1.1, as well. The background commentary to § 2S1.1 indicates that the district court correctly enhanced Puckett's offense level. The commentary emphasizes that the guidelines provide for "substantial punishment" for "financial transactions involving funds that are the proceeds of 'specified unlawful activity,' .... [i]n keeping with the clear intent of the [Anti–Drug Abuse Act of 1986]." USSG § 2S1.1, comment. (backg'd). Additionally, the commentary states that "[t]he amount of money involved is included as a factor because it is an indicator of the magnitude of the criminal enterprise and the extent to which the defendant aided the enterprise." *Id.* Furthermore, with respect to Congressional intent, the commentary explains that "narcotics trafficking is included as a factor because of the clearly expressed Congressional intent to adequately punish persons involved in that activity." *Id.* There is no prohibition on doublecounting in the commentary, and the commentary explicitly notes that the amount of money laundered as a result of criminal activity is a factor in determining the offense level. *Id.* Therefore, under *Curtis* and the explicit language of § 2S1.1(b) and its corresponding commentary, we conclude that the district court properly enhanced Puckett's sentence under § 2S1.1(b)(1) and (b)(2).

### IV.

■ Finally, Puckett contests the district court's decision to have the sentences at issue on this appeal run consecutively to his ten-year PCP sentence. The district court refused Puckett's request to have the present sentences run concurrently with his 1988 PCP sentence. In ordering the current sentences to run consecutively to the ten-year PCP sentence, the district court expressed its concern about a "very troublesome" factor in the defendant's criminal history. The court noted that the present marijuana offense represented the third time that Puckett had been convicted for some form of distribu-

tion of controlled substances. The court was also "particularly concerned" about Puckett's level of involvement with PCP—one of the "most dangerous of the illegal drugs"—as both a manufacturer and distributor. The court found that these factors counselled against leniency, even though Puckett, an injured Vietnam veteran, had cooperated with authorities and accepted responsibility for his conduct.

■ The lower court ultimately focused on the importance of not lessening the penalty for either the past or present drug offenses. In imposing the sentence, the court stated:

> In this instance, the sentence which Mr. Puckett is presently serving is a sentence imposed for a totally separate, distinct offense from anything connected with this case. That offense, by the judgment of the court which handled it, carried with it a certain sentence as punishment for that offense. Mr. Puckett is now before this court on a totally separate set of facts, constituting a totally separate offense. And the guidelines have prescribed a reasonable range of punishment for this offense. Now, the court cannot see that it is appropriate under those circumstances, in effect, to lessen the penalty, either from the prior conviction, or from this conviction, by running the sentences concurrently, and therefore, will not accede to the view that they should be run concurrently.

Although we review a district court's decision to order consecutive or concurrent sentences for abuse of discretion, *see, e.g., United States v. Devaney*, 992 F.2d 75, 77 (6th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 237, 126 L.Ed.2d 191 (1993), we review *de novo* whether the district court properly applied the relevant sentencing guideline to the defendant. *United States v. Cutler*, 36 F.3d 406, 407 (4th Cir.1994); *United States v. Jones*, 31 F.3d 1304, 1315 (4th Cir.1994). In this case, the relevant sentencing guideline is § 5G1.3(c),[5] which states:

---

**5.** Puckett's present offenses were not committed while he was serving a term of imprisonment under § 5G1.3(a), and the offense level for the present offense does not include conduct for the PCP offense, as is required for the application of § 5G1.3(b). The PCP offense only formed the basis of Puckett's criminal history category.

(Policy Statement) In any other case, the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense.

In *United States v. Wiley–Dunaway*, 40 F.3d 67, 71 (4th Cir.1994), we determined that § 5G1.3(c) should be enforced as if it were a guideline, in spite of the "Policy Statement" notation preceding it. The court's discretion to determine whether a defendant's sentence should be concurrent or consecutive under 18 U.S.C. §§ 3584 and 3553(a) is limited by § 5G1.3(c). *United States v. Whiting*, 28 F.3d 1296, 1310 (1st Cir.1994). In *Wiley–Dunaway*, we remanded the case for the district court to "consider" the methodology suggested by § 5G1.3(c) and to attempt to fashion a "reasonable incremental punishment." *Wiley–Dunaway*, 40 F.3d at 72 (quoting USSG § 5G1.3(c), comment. (n.3) and citing *United States v. Redman*, 35 F.3d 437, 441–42 (9th Cir.1994) (the "sentencing court must attempt to calculate the reasonable incremental punishment ... under the commentary methodology, but may use another method if there is a reason to abandon the suggested penalty")).

Since *Wiley–Dunaway* did not involve a probation violation, Application Note 4 of § 5G1.3, which became effective on November 1, 1993, was not applicable to the defendant's case. However, the application note clearly applies here. It states:

> If the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense, and has had such probation, parole, or supervised release revoked, the sentence for the instant offense should be imposed to be served consecutively to the term imposed for the violation of probation, parole, or supervised release in order to provide an incremental penalty for the violation of probation, parole, or supervised release (in accord with the policy expressed in §§ 7B1.3 and 7B1.4).

USSG § 5G1.3(c), comment. (n.4). Section 7B addresses probation and supervised release violations. In particular, Application Note 5 of § 7B1.3 states:

> Subsection (f) provides that any term of imprisonment imposed upon the revocation of probation or supervised release shall run consecutively to any sentence of imprisonment being served by the defendant. Similarly, it is the Commission's recommendation that any sentence of imprisonment for a criminal offense that is imposed after revocation of probation or supervised release be run consecutively to any term of imprisonment imposed upon revocation.

Although the district court did not specifically apply § 5G1.3(c) or § 7B1.3, it correctly decided that Puckett's current sentences should not be served concurrently with the probation revocation sentence. The Commission explicitly recommended that Puckett's sentence for his instant offenses run consecutively to the ten-year sentence that was reinstated after he violated the terms of his probation. *See* USSG § 7B1.3, comment. (n.5). Furthermore, the district court listed several factors that formed the basis of its decision to have the present sentences run consecutively, including the frequency of Puckett's drug convictions, the severity of Puckett's PCP offense, and the court's desire not to minimize the punishments for two different, unrelated drug offenses. *See also United States v. Wiley–Dunaway*, 882 F.Supp. 85 (S.D.W.Va.1995) (on remand, declining to follow the methodology in § 5G1.3 and choosing to substitute an alternative methodology, based upon the frequency and severity of defendant's embezzlement charges and the policy objectives of punishment and deterrence, explaining that a concurrent sentence would be "meaningless as far as incarceration is concerned because she would serve no more time than she is already required to serve on her undischarged sentences").

We, therefore, find that although the district court did not specifically state that it was applying either §§ 5G1.3(c) or 7B1.3, its reasoning indicates that the appropriate factors were considered under the relevant guidelines. Accordingly, we find that the district court did not abuse its discretion by ordering that Puckett's sentences for the in-

stant offenses run consecutively to the parole revocation sentence.

## V.

We now turn to Pamela Puckett's motion to withdraw her guilty plea under Rule 32(d) of the Federal Rules of Criminal Procedure. We review a district court's refusal to allow a defendant to withdraw a guilty plea for abuse of discretion. *United States v. Lambey*, 974 F.2d 1389, 1393 (4th Cir.1992) (en banc). The court is to consider the following factors in determining whether the defendant has met her burden under Rule 32(d) of showing a fair and just reason for the withdrawal of the guilty plea: 1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary; 2) whether the defendant has credibly asserted his legal innocence; 3) whether there has been a delay between the entering of the plea and the filing of the motion; 4) whether the defendant has had close assistance of competent counsel; 5) whether withdrawal will cause prejudice to the government; 6) and whether it will inconvenience the court and waste judicial resources. *United States v. Moore*, 931 F.2d 245, 248 (4th Cir.) *cert. denied*, 502 U.S. 857, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991). In *Lambey*, however, we stated that a "fair and just" reason for withdrawing a guilty plea is one that "essentially challenges ... the fairness of the Rule 11 proceeding." *Lambey*, 974 F.2d at 1394. We emphasized that an "appropriately conducted Rule 11 proceeding ... raise[s] a strong presumption that the plea is final and binding." *Id.*

In this case, the district court engaged in a thorough Rule 11 colloquy with Pamela Puckett. The court informed her of the mandatory minimum penalty. The court also informed the defendant that it could not determine the guideline sentence until after the presentence report had been completed. During the colloquy, Pamela acknowledged that the sentence could be more or less severe than she expected. Additionally, the plea agreement indicated that Puckett understood that sentencing was within the sole discretion of the court, and that the guidelines applied, possibly creating a mandatory period of incarceration. The parties also stipulated to a low drug weight in order to minimize the severity of her sentence. Thus, prior to accepting Pamela's guilty plea, the district court fulfilled its requirements under Rule 11 and also ascertained that the defendant read and understood the plea agreement.

Pamela Puckett's motion to withdraw her plea rests solely upon her allegation that the district court erred by not providing her with sentencing guideline information prior to her guilty plea. In *United States v. Good*, 25 F.3d 218, 219 (4th Cir. 1994), we held that Rule 11(c)(1) does not require a district court to advise the defendant about the applicable guideline range before accepting a guilty plea. *See Good*, 25 F.3d at 221 (following *United States v. Williams*, 977 F.2d 866, 871 (4th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1342, 122 L.Ed.2d 725 (1993), and *United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir.1991), *cert. denied*, 503 U.S. 997, 112 S.Ct. 1703, 118 L.Ed.2d 412 (1992)). While acknowledging the court's holding in *Good*, defense counsel, nevertheless, argues that the current process needs to be changed and that the presentence report should be prepared during plea negotiations and prior to the acceptance of the plea. While sympathetic to the concerns of defense counsel, we are constrained by existing law. We, therefore, find that the district court properly denied Pamela Puckett's motion to withdraw her plea.

## VI.

For the foregoing reasons, we uphold the pleas entered by the defendants, as well as the district court's sentencing of Marvin Puckett, Jr., and Pamela Puckett. Accordingly, the decisions of the district court are

*AFFIRMED.*