STATE OF NORTH CAROLINA v. LEON MAURICE AGER

No. COA00-1327

(Filed 3 September 2002)

**Criminal Law— guilty plea—motion to withdraw—denied**

The trial court did not err by denying defendant's motion to withdraw a guilty plea to first-degree murder where defendant never asserted his legal innocence; the case for premeditation and deliberation was not "weak"; the record is silent as to the length of time between the entry of the plea and defendant's desire to withdraw it; defense counsel was effective; defendant was competent at the time of the plea; there was plenary evidence that defendant's plea was not made hastily; and, while defendant argued a lack of prejudice to the State, the defendant must first meet his burden of showing a fair and just reason for withdrawal.

Judge BIGGS dissenting.

Appeal by defendant from judgment entered 18 November 1999 by Judge Robert P. Johnston in Cleveland County Superior Court. Heard in the Court of Appeals 10 October 2001.

*Attorney General Roy A. Cooper, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Leon Maurice Ager ("defendant") seeks appellate review, by appeal and petition for writ of certiorari, from the judgment entered on his guilty plea.

On or about 4 March 1996, defendant pled guilty to the first-degree murder of his fiancée, Vanessa Haynes. The State's summary of evidence during the entry of plea, made without any objection from defendant, tended to show the following: On the evening of 30 December 1995, Haynes was driving her eleven-year-old son to the child's grandmother's home, when she and defendant, who occupied the back seat, began to argue. When Haynes pulled onto the shoulder of the road and instructed defendant to get out of the vehicle, defendant shot Haynes at point-blank range with a .22 caliber pistol. Haynes died immediately. Defendant subsequently told a responding officer of the Shelby Police Department that he shot Haynes because she was always "disrespecting him" and "going out to get drunk." Judge Forrest A. Ferrell accepted defendant's plea, but upon the motion of trial counsel, continued judgment in the case until counsel could prepare adequately for defendant's capital sentencing hearing.

Defendant subsequently moved to withdraw his guilty plea, arguing that "fair and just" reasons existed for withdrawal of his guilty plea on or about 26 November 1997. This matter was heard by Judge Ronald K. Payne on 16 January 1998; and after a full evidentiary hearing, Judge Payne found no fair and just reason to permit defendant's withdrawal of his guilty plea. Judge Payne, therefore, denied defendant's motion.

On 1 July 1999, defendant filed a "Motion for Appropriate Relief" pursuant to the post-conviction provisions of Chapter 15A, article 89 of our General Statutes. However, since judgment had been continued in this matter, Judge Forrest D. Bridges apprised counsel that a post-conviction motion for relief was not properly before him. Judge Bridges, with the approval of defense counsel, treated the filing as a motion to reconsider the motion to withdraw the guilty plea. After hearing the testimony, and reviewing the evidence of record from defendant's entry of plea and the hearing on his motion to withdraw his guilty plea, Judge Bridges found and concluded that defendant had failed to present any "newly discovered evidence," so as to entitle him to reconsideration of his motion to withdraw his guilty plea.

The case then proceeded to capital sentencing during the 8 November 1999 criminal session of superior court before Judge

STATE v. AGER

[152 N.C. App. 577 (2002)]

Robert P. Johnston. The jury recommended life imprisonment, and the trial court entered judgment accordingly on 18 November 1999. Defendant appeals, and limited by the provisions of N.C. Gen. Stat. § 15A-1444(e), seeks review of the trial court's order denying his motion to withdraw his guilty plea. Defendant also petitions for writ of certiorari to review other issues outside of those permitted by N.C. Gen. Stat. § 15A-1444(e).

---

On appeal, defendant argues that his guilty plea must be vacated because the evidence presented at the hearing on his motion to withdraw his plea constituted "fair and just" reason to entitle him to withdraw his plea. We disagree.

The standard to be utilized in considering a pre-sentence motion to withdraw a guilty plea is well settled: a trial court should allow a defendant to withdraw his guilty plea upon his showing that "any fair and just reason" exists for such relief. *State v. Handy*, 326 N.C. 532, 538, 391 S.E.2d 159, 162 (1990); *see also State v. Meyer*, 330 N.C. 738, 743, 412 S.E.2d 339, 342 (1992) (providing that a defendant bears the burden of showing that fair and just reason exists for the withdrawal of his guilty plea). In *Handy*, the Supreme Court provided a laundry list of factors to be considered when addressing a motion to withdraw a guilty plea:

> Some of the factors which favor withdrawal include whether the defendant has asserted legal innocence, the strength of the State's proffer of evidence, the length of time between entry of the guilty plea and the desire to change it, and whether the accused has had competent counsel at all relevant times. Misunderstanding of the consequences of a guilty plea, hasty entry, confusion, and coercion are also factors for consideration. The State may refute the movant's showing by evidence of concrete prejudice to its case by reason of the withdrawal of the plea. Prejudice to the State is a germane factor against granting a motion to withdraw.

326 N.C. at 539, 391 S.E.2d at 163 (citations omitted). This Court's review of the trial court's ruling on a motion to withdraw a guilty plea requires an "independent review of the record" to determine whether there existed a fair and just reason for the trial court to have allowed the motion. *Id.* at 539, 391 S.E.2d at 163.

In the instant case, the evidence tends to show that on or about 31 October 1995, defendant was involved in an automobile accident. This accident resulted in the death of his uncle and serious injuries,

including head injuries, to defendant. Defendant received medical treatment for his injuries, which included emergency brain surgery, and was taking several anti-seizure medications as a result of his head injuries. Thereafter, defendant received continuing treatment for his head injuries at the Charlotte Institute of Rehabilitation, was seen by a plastic surgeon to address his facial injuries, and underwent speech therapy with speech therapist, Shannon McCool, to assist him in with speech deficiencies which occurred as a result of the October 1995 car accident.

Some two months after the October 1995 car accident, on 30 December 1995, defendant shot his fiancée at point-blank range, in front of her eleven-year-old son. Defendant told the officer, who responded to the scene, that he shot Haynes because she was always "disrespecting him" and "going out to get drunk."

Two attorneys were appointed to represent defendant in this case just two days after his arrest. Counsel began to immediately act on the case. Initially, counsel filed a Motion Questioning Defendant's Capacity to Proceed, and the trial court entered an order appointing a local certified forensic examiner, who recommended further evaluation at Dorthea Dix Hospital. On that next day, 5 January 1996, counsel filed a motion to have defendant examined at Dorthea Dix Hospital, and again the trial court allowed counsel's motion and entered an order committing defendant to Dix for up to 60 days.

Defendant pled guilty, against the advice of trial counsel, on 4 March 1996, some 65 days after his arrest and notably, just before trial was to begin on three other violent felonies against the present victim. After defendant instructed counsel that he wanted to plead guilty to murder, counsel negotiated an agreement with the State, obligating the State to dismiss those other charges—attempted murder, assault with a deadly weapon with intent to kill inflicting serious injury, and first-degree burglary—against defendant, in exchange for his guilty plea. While under oath during the entry of his plea, defendant testified that counsel had explained the murder charge against him, as well as those felony charges that the State had agreed to dismiss. Furthermore, although defendant later testified during his motion hearing that he had only met with trial counsel twice prior to the entry of his guilty plea, defendant previously testified that he had talked to counsel on eight to ten occasions and had asked all of the questions he desired. When questioned by the court, defendant replied that he was satisfied with counsel's representation. Importantly, although defendant expressed a desire to die, counsel

**STATE v. AGER**

[152 N.C. App. 577 (2002)]

fought diligently to prevent defendant from receiving a death sentence: after entry of defendant's guilty plea, counsel sought additional forensic and psychological examination of defendant in preparation for sentencing; and it appears that counsel ordered defendant's medical records from various hospitals (with the exception of the records of defendant's speech therapist from Cleveland Regional Medical Center), at which defendant had received treatment both before and after the 31 October 1995 car accident resulting in his head injuries.

At the hearing on his motion to withdraw his plea, defendant testified that it was not until after seeing psychiatrists and talking with other inmates that he decided to withdraw his plea. Defendant could not, however, remember when this change of heart occurred. Further, although he asserted that he sent his attorneys a letter expressing his wish to withdraw his plea, counsel did not produce such a letter or elucidate on when defendant changed his mind about pleading guilty. Defendant's motion to withdraw his guilty plea was filed with the superior court approximately twenty months after his guilty plea was tendered and accepted by Judge Ferrell.

At the hearing on the motion to withdraw, the report of Dr. Nicole Wolfe, the Associate Director of Forensic Psychiatry at Dorthea Dix Hospital, was submitted. Therein, Dr. Wolfe opined that defendant was capable of proceeding to trial (contingent upon his continuing to take his medication), and that he understood the charges against him. Dr. Wolfe further felt that defendant understood his position relative to the proceedings and was capable of working with an attorney to prepare his defense. At the time of the entry of his guilty plea, defendant was taking his anti-seizure medicine, but because of "personal reasons" had stopped taking his Prozac, an anti-depressant, just two weeks before the entry of plea. While defendant attempts to make much of the fact that he had stopped taking his Prozac, in derogation of Dr. Wolfe's contingency statement, during the entry of plea, Judge Ferrell made a thorough inquiry into defendant's competency and his state of mind. Defendant assured the judge that his decision to plead guilty was a firm decision, having been made more than a month and a half previously, and that he had not wavered from it. Defendant did not present any psychiatric testimony at the entry of plea or at the motion to withdraw hearing to show that his failure to take his Prozac, one of several medications which had been prescribed to him, would result in his plea being unknowing or involuntary. Notably, speech therapist Shannon McCool testified that defendant had short-

STATE v. AGER

[152 N.C. App. 577 (2002)]

term memory deficits that would have rendered him unable to understand and respond to the open-ended questions posited by the trial court during the entry of his guilty plea in March 1996. However, after extensive questioning from the trial court, it readily appeared that McCool's conclusions in this regard were in error. Near the end of the hearing on defendant's motion to withdraw his guilty plea, the State admitted that a withdrawal of the plea would not cause the State "any prejudice outside the ordinary prejudice caused by the two-year delay between the offense [and the trial]."

Upon an independent review of the record, the Court concludes that Judge Payne did not err in denying defendant's motion to withdraw his guilty plea. First, defendant never asserted his legal innocence. His contention that his was not a case of first-degree murder is based upon what psychiatrists and death row inmates told him. Defendant admitted culpability to the responding officer shortly after the commission of the offense, while under oath during the entry of his guilty plea, and during the January 1996 hearing on his motion to withdraw his guilty plea.

Second, based upon defendant's admission at the scene of the murder to the responding officer and the eye witness account of the victim's son, we further conclude that the State's case for premeditation and deliberation was not "weak" as alleged by defendant. Third, the record is eerily silent as to the length of time between the entry of the plea and defendant's desire to withdraw it. Defendant could not remember the date or time frame in which he made his decision to withdraw his plea and during closing arguments at the January 1998 hearing, counsel admitted that defendant's request was not "at an early stage" but "some months later." The only concrete evidence of the length of time between the entry of the plea and defendant's desire to withdraw that plea is the twenty-month period between the entry of plea and the filing of defendant's motion to withdraw. Even assuming that it took counsel six or seven months to prepare the motion, it appears that there was still a significant amount of time between the entry of defendant's plea and his desire to change his plea.

Fourth, we wholly reject defendant's claim of ineffective assistance of counsel. On this record, defendant cannot satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, *reh'g denied*, 467 U.S. 1267, 82 L. Ed. 2d 864 (1984), and adopted by this State in *State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241 (1985). Indeed, the evidence tends to show that counsel immediately went to

work on defendant's case upon appointment, made numerous filings to obtain expert evaluation of defendant's competency, and fought and won a battle to save defendant's life, despite defendant's wish to die. The only evidence not uncovered by counsel prior to the entry of defendant's plea was the evidence of defendant's treatment by speech therapist Shannon McCool at Cleveland Regional Medical Center for speech impairment and short-term memory difficulties he suffered after a October 1995 car accident. Based on the present evidence, we simply cannot say that defendant has shown that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," so as to be entitled to relief here. *See Hill v. Lockhart*, 474 U.S. 52, 59, 88 L. Ed.2d 203, 210 (1985) (noting that to satisfy the "prejudice" prong of the *Strickland* test in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial[.]").

Fifth, we conclude that defendant was competent, within the meaning of G.S. § 15A-1001(a) at the time of the entry of plea. *See* N.C. Gen. Stat. § 15A-1001(a) (2001) (defining incompetence as where "by reason of mental illness or defect [the defendant] is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner[.]"). Defendant attempts to make much of the short period between the October 1995 accident, which resulted in his head injuries, and the December 1995 murder of his fiancée. However, the record reveals that defendant had a long history of depression, chronic drug use, and violence. In fact, defendant had several felony charges, involving violence against this victim, pending in the superior court at the time that he killed his fiancée. In addition, defendant's failure to take one of his medications, the anti-depressant Prozac, was notably for his own "personal reasons," and did not seem to affect his ability to understand the proceedings before him. In fact, the stenographic transcript of the plea proceedings tends to show that defendant had made up his mind to plead guilty a month and a half earlier and was steadfast in that decision at the time that he entered his plea. Therefore, we reject defendant's argument that defendant's failure to take his Prozac for two weeks prior to the entry of plea, would "nullify" Dr. Wolfe's expert opinion that defendant was competent to stand trial and understood the proceedings. *See State v. Reid*, 38 N.C. App. 547, 550, 248 S.E.2d 390, 392 (1978) (holding that the trial court's finding of competency could not be upheld since the examining psychiatrist's conclusion

that the defendant's schizophrenia was in remission and he was therefore competent to stand trial was nullified by testimony at trial that the psychiatrist had not seen the defendant some two or three months thereafter, and could not state an opinion whether defendant was still competent at the time of trial), *disc. review denied*, 296 N.C. 588, 254 S.E.2d 31 (1979). Defendant was taking all of his other medications at the time that he entered his plea, and responded while under oath that he knowingly and voluntarily entered his plea. Absent clear and convincing evidence to the contrary, defendant will be bound by such an assertion. *See Little v. Allsbrook*, 731 F.2d 238 (4th Cir. 1984). To that same end, we also conclude that there is no evidence that defendant was confused during the entry of plea. While the excerpts from the *Physician's Desk Reference* and *The Essential Guide to Prescription Drugs*, submitted as support for defendant's argument to the contrary, list mental confusion as a probable, possible, or rare side-effect of the medications that defendant was taking at the time that his plea was entered, we note that the evidence of record does not show that the medication had this effect on defendant at the time in question. Moreover, contrary to defendant's assertions, we find no evidence of confusion on the part of counsel or Judge Ferrell, nor how such confusion prejudiced defendant.

Sixth, plenary evidence shows that defendant's plea was not made hastily. The plea was made 65 days after defendant's arrest, after discussion of the matter with, and against the advice of, counsel. Notably, the plea was made just as three other violent felonies were to be tried; and as part of the negotiated plea, the State agreed to drop those charges in exchange for defendant's guilty plea. During the entry of defendant's plea, defendant told Judge Forrest that despite the advice of counsel, he had made up his mind to plead guilty and "think that this is the best way and onliest [sic] way justice can be served." It, therefore, seems that defendant's decision was made after some thought.

Finally, although defendant argues that lack of prejudice to the State in and of itself constitutes a "fair and just reason" to allow the withdrawal of his guilty plea, under *Handy*, the defendant must first meet his burden of showing the existence of a fair and just reason for withdrawal, and then, and only then, is the State required to come forward with evidence to "refute the movant's showing by evidence of concrete prejudice to its case by reason of the withdrawal of the plea." 326 N.C. at 539, 391 S.E.2d at 163.

In sum, we hold that defendant failed to meet his burden of showing that there existed a fair and just reason to allow him to withdraw his guilty plea. Accordingly, we affirm Judge Payne's order denying defendant's motion to withdraw his guilty plea. In light of our holding in this regard, we deny defendant's petition for writ of certiorari in which he recapitulates his entitlement to relief from his guilty plea. *See State v. Grundler and State v. Jelly*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959) (providing that the writ of certiorari is a discretionary writ to be granted only upon a showing of "good and sufficient cause;" and that "[t]he petition for the writ must show merit or that error was probably committed below[]"), *cert. denied*, 362 U.S. 917, 4 L. Ed. 2d 738 (1960). Judgment affirmed; petition for certiorari denied.

Judge McGEE concurs.

Judge BIGGS dissents.

BIGGS, Judge dissenting.

Because I believe the defendant offered fair and just reason to withdraw his plea of guilty to first degree murder, I respectfully dissent.

In reviewing the trial court's ruling on a motion to withdraw a guilty plea, this Court does not apply an abuse of discretion standard, but instead conducts an independent review of the record. This independent review should consider the reasons offered by the defendant in conjunction with any prejudice to the State, and determine if it would be fair and just to allow defendant's motion to withdraw his plea of guilty. *State v. Davis*, —— N.C. App. ——, ——, 562 S.E.2d 590, 592 (2002).

"A 'fair and just' reason for withdrawing a guilty plea is one that 'essentially challenges . . . the fairness of the [plea] proceeding." *United States v. Puckett*, 61 F.3d 1092, 1099 (4th Cir. 1995) (citation omitted). Further, although the majority opinion accurately enumerates factors appropriate for a court's consideration in ruling on a motion to withdraw a plea, "these factors are only balancing considerations," *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991), rather than a 'laundry list' as suggested by the majority. "In general, 'a presentence motion to withdraw a plea of guilty should be allowed for *any* fair and just reason.' " *State v. Davis*, —— N.C. App. at ——, 562 S.E.2d at 592 (quoting *State v. Handy*, 326 N.C. 532, 539, 391 S.E.2d 159, 162 (1990)) (emphasis added).

STATE v. AGER

[152 N.C. App. 577 (2002)]

In the instant case, it is undisputed that defendant: (1) had a significant history of substance abuse and emotional problems;(2) had been subject to involuntary commitment proceedings within the two years preceding the subject offense; (3) suffered severe skull injuries in a motor vehicle accident two months before the offense, requiring surgery, and resulting in some cognitive impairment; (4) repeatedly expressed suicidal desires; and (5) explicitly and repeatedly stated an intention to employ the criminal justice system to kill himself, even asking for a "speedy death penalty". Further, although the Cleveland County forensic examiner and the forensic psychiatrist at Dix hospital reached differing conclusions regarding defendant's competency to stand trial, the forensic psychiatrist explicitly determined that defendant's "capacity to proceed [was] contingent upon his taking his medications as prescribed." The transcript, however, establishes unequivocally that defendant had abruptly discontinued prescribed Prozac a week or so before the entry of the plea:

> THE COURT: When was the last time, if at all, you used or consumed any such substance?
>
> DEFENDANT: This morning.
>
> THE COURT: And what was that, sir?
>
> DEFENDANT: I took Dilantin, um, Tegretal, Orudis, Prozac.
>
> MR. FARFOUR: He did not take his Prozac this morning. He's been on Prozac up until about a week ago.
>
> . . . .
>
> THE COURT: So as a result of an automobile accident you were involved in in October, you have—you have a head injury. Tell me about that.
>
> DEFENDANT: . . . I dropped off a fifty foot cliff. I . . . I sustained a fractured skull, and . . . and they had to do brain surgery and replace my skull. And basically, I was bleeding from the brain.

Moreover, the plea transcript reveals what the forensic psychiatrist termed defendant's "suicidal ideation." Defendant repeatedly expressed to the court during the plea hearing that his aim in pleading guilty was to obtain the death penalty:

> DEFENDANT: . . . . I *want to plead guilty* to first degree murder and—*with the possibility of death. That's my objective. I mean*

**STATE v. AGER**

[152 N.C. App. 577 (2002)]

*that's the onliest way I feel like I can make it up* to her family, my family, and the community.

. . . .

DEFENDANT: . . . Your Honor, I'm just ready to get this over with as soon as possible so it won't be no more trauma—I mean, on her kids, especially, and my kids. I think that—I *think that death is the onliest way.* And I'm saying this from my heart.

. . .

THE COURT: *You understand* under the law of North Carolina, *the maximum punishment* for first degree murder *may be death?*

. . . .

DEFENDANT: Yes, that's—*that's what I prefer.*

. . . .

DEFENDANT: Okay, yes, I have one question that I asked my attorneys.

THE COURT: Yes, sir.

. . . .

DEFENDANT: I know *they came out* with new law or some-thing, you know, about a *speedy death penalty* that—something that you don't have to—I mean, you can violate—I mean, you don't have to—you can turn down your appeal. That's—ain't that the new law now? That's why I'm trying to ask. I would like to know.

. . . .

DEFENDANT: Okay. What I was—I mean—I mean, since this—since I've been in Raleigh, and I have a clear mind, I've been—*I've been going to death myself, too.* . . . (emphasis added)

Next, in considering the time frame in which defendant moved to set aside his plea of guilty, I find it significant that defendant entered a plea of guilty, against the advice of counsel, just a few weeks after his return from Dix hospital. Defendant pled guilty to first degree murder just two months after his arrest, even before the mandatory Rule 24 conference had taken place. Admittedly, a period of perhaps six months to a year passed, after the plea hearing, before defendant contacted his attorneys seeking to withdraw his plea. However, this is

consistent with what Dr. Coleman, a forensic psychologist who conducted a neuropsychological evaluation of defendant, described as the "predictable course of recovery of function following brain injury . . . [in which] maximum improvement is obtained within eighteen months or so[.]" While the majority opinion stresses the length of time it took defendant to move to withdraw his plea of guilty, it is noteworthy that defendant's motion was presented two years *before* his sentencing. Thus, I agree with the majority opinion that no particular prejudice inured to the state by virtue of defendant's delay.

Defendant has not asserted his factual innocence of the offense of first degree murder and, based on the state's proffer of a factual basis for the plea, it would appear pointless to do so. However, due to the substantial evidence in the record of defendant's mental instability, a trial of this case might well yield a different result.

Finally, like the majority opinion, I reject defendant's contention of ineffective assistance of counsel. However, the record and transcript of plea clearly demonstrate that defendant entered a plea of guilty in order to receive the death penalty, as a means of perhaps carrying out his suicidal ideation; that at the time of entry of plea he was on several psychoactive medications; that he had discontinued one of the medications, notwithstanding the forensic psychiatrist's opinion that his competency to proceed depended on taking medications as prescribed; that the plea was entered within a few months of his suffering brain injury in an accident; and that the plea was entered against the advice of counsel. Because I believe there is compelling evidence of 'fair and just' reason to allow defendant to withdraw his plea, and the state demonstrated no prejudice, I would reverse.