STATE OF NORTH CAROLINA v. JEROME CANNON McCOY

No. COA04-209

(Filed 19 July 2005)

**Appeal and Error— failure to comply with appellate rules— untimely notice of appeal—purported petition for writ of certiorari**

The State's motion to dismiss defendant's appeal concerning motions defendant filed pro se is granted and the Court of

———————

Appeals declines to exercise its discretion under Rule 2 to correct the defects in defendant's purported petition for writ of certiorari and further denies defendant's purported petition for writ of certiorari, because: (1) defendant failed to give notice of appeal within fourteen days from the entry of the order holding him in contempt as required by N.C. R. App. P. 4(a)(2) and thus the Court of Appeals is without jurisdiction to hear the appeal; (2) N.C. R. App. P. 27(c) prohibits the Court of Appeals from granting defendant an extension of time to file his notice of appeal since compliance with the requirements of Rule 4(a)(2) is jurisdictional and cannot simply be ignored by the Court of Appeals; and (3) it is not the role of the appellate courts to create an appeal for an appellant.

Judge GEER dissenting.

Appeal by defendant from judgment entered 15 September 2003 by Judge Michael E. Helms in Guilford County Superior Court. Heard in the Court of Appeals 20 October 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Margaret P. Eagles, for the State.*

*Appellate Defender Staples Huges, by Assistant Appellate Defender, Matthew D. Wunsche, for defendant-appellant.*

STEELMAN, Judge.

On 15 September 2003, defendant appeared before the Superior Court of Guilford County, along with his court-appointed counsel, Thomas Maddox, concerning motions defendant had filed *pro se.* Defendant was in custody at the time of the hearing. When defendant was leaving the courtroom following the hearing, he stated to Julia Hejazi, the assistant district attorney, "you're going down." The trial judge found defendant to be in direct contempt of court and sentenced him to thirty days in the county jail. The order was reduced to writing and entered on 15 September 2003, with a copy delivered to defendant at the jail on 18 September 2003. Defendant gave notice of appeal on 13 October 2003.

We first consider the State's motion to dismiss defendant's appeal for failure to give notice of appeal within fourteen days from the entry of the order holding him in contempt as required by Rule 4(a)(2) of the North Carolina Rules of Appellate Procedure. Defendant freely

acknowledged that the notice of appeal was not timely given. In a footnote to his Statement of Facts, defendant states the following:

> Defendant acknowledges that notice of appeal was given outside of the 14-day period set by N.C. Rule of Appellate Procedure 4(a)(2). Defendant asserts, however, that the delay was due to the denial of his constitutional and statutory right to counsel and the summary nature of the contempt proceeding, as discussed in arguments I and II below. If this Court does not recognize defendant's notice of appeal, defendant respectfully requests this Court consider this brief as a Petition for a Writ of Certiorari and consider the issues raised on their merits.

We note that when a defendant has not properly given notice of appeal, this Court is without jurisdiction to hear the appeal. *See State v. McMillian*, 101 N.C. App. 425, 427, 399 S.E.2d 410, 411 (1991). *See also Sillery v. Sillery*, 168 N.C. App. 231, 234, 606 S.E.2d 749, 751 (2005). Rule 27(c) of the Rules of Appellate Procedure prohibits this Court from granting defendant an extension of time to file his notice of appeal since compliance with the requirements of Rule 4(a)(2) is jurisdictional and cannot simply be ignored by this Court. *See O'Neill v. Bank*, 40 N.C. App. 227, 230, 252 S.E.2d 231, 233-34 (1979).

While this Court cannot hear defendant's direct appeal, it does have the discretion to consider the matter by granting a petition for writ of *certiorari*. "The writ of *certiorari* may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action, . . . ." N.C. R. App. P. 21(a). This rule goes on to specify the contents of a petition for writ of *certiorari*:

> The petition shall contain a statement of the facts necessary to an understanding of the issues presented by the application; a statement of the reasons why the writ should issue; and certified copies of the judgment, order or opinion or parts of the record which may be essential to an understanding of the matters set forth in the petition. The petition shall be verified by counsel or the petitioner. Upon receipt of the prescribed docket fee, the clerk will docket the petition.

N.C. R. App. P. 21(c) (2005).

The footnote contained in appellant's brief clearly does not meet the requirements set forth in Rule 21(c). "The North Carolina Rules of

Appellate Procedure are mandatory and 'failure to follow these rules will subject an appeal to dismissal.' " *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 360 (2005). In order to correct the deficiencies in defendant's purported petition for writ of *certiorari*, we would have to invoke the provisions of Rule 2 of the Rules of Appellate Procedure.

The authority granted in Rule 2 is discretionary. *State v. Owens*, 160 N.C. App. 494, 498, 586 S.E.2d 519, 522 (2003) (citing to N.C. R. App. P. 2). The provisions of Rule 21 are also discretionary. *State v. Ager*, 152 N.C. App. 577, 585, 568 S.E.2d 328, 333 (2002) (citing *State v. Grundler* and *State v. Jelly*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959)).

We decline to exercise our discretion under Rule 2 to correct the defects in defendant's purported petition for writ of *certiorari*. In addition, we further decline to exercise our discretion and deny defendant's purported petition for writ of *certiorari*. "It is not the role of the appellate courts . . . to create an appeal for an appellant." *Viar*, 359 N.C. at 402, 610 S.E.2d at 361.

The State's motion to dismiss defendant's appeal is granted.

APPEAL DISMISSED; PETITION FOR WRIT OF CERTIORARI DENIED.

Judge CALABRIA concurs.

Judge GEER dissents.

GEER, Judge, dissenting.

Rule 2 of the Rules of Appellate Procedure provides that "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative . . . ." I can conceive of no greater example of "manifest injustice" than to allow a man to be imprisoned based only on unsworn statements, including statements not made on the record. Adding to the "manifest injustice" is the fact that during the course of the proceedings below—which certainly did not amount to a formal hearing—trial counsel stood mute. He said not a word. To allow a man to be con-

victed based literally on no competent evidence and without any representation by trial counsel defines "manifest injustice."

I cannot join in the majority's decision to dismiss this unquestionably meritorious appeal solely because appellate counsel followed the not uncommon approach of requesting in a footnote that this Court treat the appeal as a petition for writ of certiorari. While defendant is hardly sympathetic and his sentence is only 30 days, these facts cannot erase the trial court's departure from the fundamental principles underlying our country's judicial system. To put it bluntly: North Carolina does not administer justice in this manner. I do not believe this Court should turn a blind eye based on a less than two-week delay in the appeal from a defendant who was effectively unrepresented by counsel.

Although the majority relies upon *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 610 S.E.2d 360 (2005), I do not believe that our Supreme Court intended in *Viar* to eviscerate Rule 2, especially in criminal appeals. Since the Supreme Court has not amended the Rules of Appellate Procedure to eliminate Rule 2, the Rule must still exist to prevent "manifest injustice" or "to expedite decision in the public interest." If Rule 2 is to have any continuing meaning, it must be available in cases such as this one. I would, therefore, deny the State's motion to dismiss, reverse the trial court, and remand to have the trial court conduct contempt proceedings in accordance with N.C. Gen. Stat. § 5A-15 (2003).

### Facts

Defendant appeared with his appointed counsel at a hearing on 15 September 2003 to address motions that defendant had filed *pro se* in a criminal matter. After the trial court granted defendant's request for additional time to prepare for a hearing on his motions, defendant was led out of the courtroom. The assistant district attorney then asked the court to "put on the record that as the defendant walked out of the courtroom, he looked at me and said you're going down and continued to mumble to me." Defense counsel is reported as then saying, "I thought you were doing a great job, Judge."

The judge immediately had defendant returned to the courtroom. At this point, according to the transcript, the judge did not place any witnesses under oath. No one testified; no evidence was admitted. Instead, as soon as defendant was again before him, the judge engaged defendant and the assistant district attorney in the following exchange:

THE COURT: Mr. McCoy, I thought I'd give you another opportunity to be heard. . . . When you left the courtroom, the district attorney said that *while you were behind me where I couldn't see you that you looked at her and—what did you say that he mouthed?*

MS. HEJAZI [the assistant district attorney]: I believe he said you're going down. And he continued to make gestures with his face and looking at me making comments.

THE COURT: You're going down. Now, this is following on the heels of a motion that you had made where you indicated he threatened you, Madam District Attorney? Is that true? Which motion was that?

MS. HEJAZI: The motion, Your Honor, that I—

THE COURT: I'm not sure that I ever saw that language in the body.

MS. HEJAZI: Specifically to me was the motion filed September 9. It's titled Motion to Dismiss Frivolous Warrants. On the back page, the last paragraph says Ms. Hejazi, I'm willing to die and meet my creator defending our great United States Constitution and the rights that are guaranteed. Are you willing to die and go to hell to try—trying to mutilate and molest our great constitution?

. . . .

THE COURT: Mr. McCoy, I'm concerned—that's not a direct threat. But it certainly sounds threatening to me.

(Emphasis added.)

The judge then continued:

I'm thinking that you have reduced the dignity of this Court and you turned this courtroom into a ring, an arena for violence and intimidation, and we just can't have that in our courts.

What do you—what would you like to say regarding whether or not I should hold you in contempt for threatening this young lady as you left the courtroom today in light of what has gone on before?

THE DEFENDANT: Well, Your Honor, I didn't threaten her for one—I mean nobody else seems to have heard it but her.

THE COURT: You didn't say it. You mouthed it to her.

THE DEFENDANT: Did anybody else see me mouth it to her?

THE COURT: Got two other, three other defense attorneys. Jim Kimel on the front row there.

Except for Mr. Kimel, the record does not reveal the names of the unidentified attorneys to whom the court was referring; nor does the record indicate what they saw or heard. As the transcript does not reflect any exchange that may have taken place between these attorneys and the judge, I am unable to ascertain how the court knew that they would corroborate the assistant district attorney. At no time did these three individuals testify or even make any unsworn, recorded statements.

Following the judge's reference to Mr. Kimel and the other unnamed attorneys, defendant's father asked to speak and stated that he had not heard defendant say anything to the assistant district attorney. The judge responded:

> *The question is not whether he verbally or orally said some-thing. I could have heard it. I'm right here. We have four people here who are willing to say or who have said that they saw him mouth that threat to her.*

> . . . .

> Anything else you want to say, Mr. McCoy, . . . with regard to whether I should hold you in contempt for threatening the prosecutor while you were in open court?

THE DEFENDANT: Well, Your Honor, I apologize if anything— any of my actions were mistaken in any way, form, or fashion. It's not my intention at all to disrespect this Court at all. I came here with respect.

THE COURT: She is an officer of the Court. If you threaten her, then you threaten the Court.

THE DEFENDANT: But I did not.

(Emphasis added.)

Defendant's counsel on the pending charge of assault with a deadly weapon inflicting serious injury was present throughout this entire exchange, but he remained silent. The judge proceeded to summarily hold defendant in contempt and sentence him to 30 days

in jail. With respect to defendant's other charge, for which he originally had appeared before the court, the judge increased his bond to $500,000.00 "[i]n light of the obvious threat to the community if released." At this point, defense counsel asked permission to approach the bench to retrieve the copies of defendant's *pro se* motions. He said nothing about the contempt.

On the same day, 15 September 2003, the trial court entered a written contempt order, stating that defendant had threatened an officer of the court and that

> [t]he Court finds as a fact, beyond a reasonable doubt, and concludes as a matter of law that the defendant is guilty of direct criminal contempt, because the defendant committed willful, disruptive conduct, described above, in the Courtroom, within the sight and presence of a presiding judicial official, in violation of G.S. 5a-11(a)(1) & (2). The said willful behavior directly tended to impair the respect due the authority of the Court, and directly interrupted the business of the Court. It was necessary to proceed summarily in order to maintain the dignity and authority of the Court.

A handwritten note at the bottom of the contempt order indicates that a copy of the order was forwarded to the jail on 18 September 2003. On 13 October 2003, defendant gave notice of appeal from the order in open court. Appellate entries followed on the same day.

### Defendant's Untimely Appeal

I agree with the majority that the record suggests defendant failed to make a timely notice of appeal. I also agree that appellate counsel's reliance upon a general assertion in a footnote is not adequate. Counsel wrote only: "Defendant asserts, however, that the delay [in appealing] was due to the denial of his constitutional and statutory right to counsel and the summary nature of the contempt proceeding, as discussed in arguments I and II below." Counsel did not file a separate petition for writ of certiorari or any affidavit in support of his request that this Court grant defendant a belated appeal. Nor did counsel file a response to the motion to dismiss, apparently choosing to rely upon his sketchy footnote.

Under Rule 21 of the Rules of Appellate Procedure, a writ of certiorari may be issued "when the right to prosecute an appeal has been lost by failure to take timely action . . . ." N.C.R. App. P. 21(a)(1). It is, however, well-established that "[c]*ertiorari* may not be used as

a substitute for an appeal expressly provided for by law, unless the right of appeal has been lost through no fault of the petitioner." *Johnson v. Taylor*, 257 N.C. 740, 743, 127 S.E.2d 533, 535 (1962). To meet this requirement, defendants should file an affidavit in support of the petition for writ of certiorari, demonstrating a lack of neglect. *State v. Johnson*, 183 N.C. 730, 731, 110 S.E. 782, 782 (1922) ("[O]n an affidavit showing no neglect on [the belated appellant's] part, he should have moved for a *certiorari*."). *See also State v. Angel*, 194 N.C. 715, 716, 140 S.E. 727, 728 (1927) (holding that a petitioner must show not only merit to his claims, but also excusable neglect in failing to timely appeal).

Nevertheless, I believe the evidence apparent on the record is sufficient to indicate that defendant lost his right to appeal through no fault of his own. The trial transcript reveals that trial counsel appointed to represent defendant on the underlying criminal charges took no role during the contempt proceedings. Since defendant was immediately removed from the courtroom and effectively no counsel was available to advise or represent defendant, he did not have a meaningful opportunity to give oral notice of appeal.

Further, once the trial court reduced its order to writing, the record does not contain any evidence that the order was in fact provided to defendant. A handwritten note at the bottom of the contempt order indicates that a copy of the order was forwarded to the jail on 18 September 2003. While this note may establish that the jail received the order, it does not necessarily indicate, standing alone, that defendant received a copy of the order. The record contains no suggestion that defendant's trial counsel on the underlying charges—or any other counsel acting on his behalf—received a copy of the order.

As the Fourth Circuit has held, the availability of counsel at that interim stage is critical to ensuring a defendant access to an appeal:

> [W]e think that counsel is also required in the hiatus between the termination of trial and the beginning of an appeal in order that a defendant know that he has the right to appeal, how to initiate an appeal and whether, in the opinion of counsel, an appeal is indicated. This interim is a critical, crucial one for a defendant because he must make decisions which may make the difference between freedom and incarceration.

*Nelson v. Peyton*, 415 F.2d 1154, 1157 (4th Cir. 1969), *cert. denied*, 397 U.S. 1007, 25 L. Ed. 2d 420, 90 S. Ct. 1235 (1970). Under the particular

circumstances of this case, I would exercise discretion to treat defendant's appeal as a petition for writ of certiorari and allow it in accordance with N.C.R. App. P. 21(a)(1).

I also do not believe that the majority's dismissal can be reconciled with the United States Supreme Court's holding in *Evitts v. Lucey*, 469 U.S. 387, 83 L. Ed. 2d 821, 105 S. Ct. 830 (1985). In *Evitts*, the Supreme Court held for the first time that a criminal defendant is entitled to effective assistance of counsel on appeal. *Id.* at 396, 83 L. Ed. 2d at 830, 105 S. Ct. at 836. The Court held that "if a State has created appellate courts as an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant, the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Id.* at 393, 83 L. Ed. 2d at 827-28, 105 S. Ct. at 834 (internal quotation marks and citations omitted). Due Process requires "a State that afford[s] a right of appeal to make that appeal more than a meaningless ritual by supplying an indigent appellant in a criminal case with an attorney." *Id.* at 393-94, 83 L. Ed. 2d at 828, 105 S. Ct. at 834-35 (internal quotation marks omitted).

The *Evitts* Court pointed to a critical aspect of counsel's role as "that of expert professional whose assistance is necessary in a legal system governed by complex rules and procedures for the defendant to obtain a decision at all—much less a favorable decision—on the merits of the case." *Id.* at 394 n.6, 83 L. Ed. 2d at 829 n.6, 105 S. Ct. at 835 n.6. The Court, therefore, concluded: "A system of appeal as of right is established precisely to assure that only those who are validly convicted have their freedom drastically curtailed. A State may not extinguish this right because another right of the appellant—the right to effective assistance of counsel—has been violated." *Id.* at 399-400, 83 L. Ed. 2d at 832, 105 S. Ct. at 838.

Here, by dismissing this appeal, the majority denies defendant his right to appeal because he lacked counsel below and because his appellate counsel failed to effectively seek a belated appeal. I agree with the majority's conclusion that appellate counsel should not have relied upon a conclusory and *pro forma* footnote requesting review by writ of certiorari, but I join the United States District Court for the Middle District of North Carolina in believing that the sanction for such a dereliction should not be borne by the criminal defendant:

When counsel unnecessarily jeopardizes petitioner's right to an appeal, it is incumbent on the state courts to take prophylac-

tic action to prevent forfeiture of the appeal. No good reason exists to penalize petitioner for his counsel's failure. Upon discovering a dereliction of duty by counsel, the state court would have been better advised to have disciplined counsel rather than visit the retribution on petitioner.

*Galloway v. Stephenson*, 510 F. Supp. 840, 843-44 (M.D.N.C. 1981). Accordingly, I would exercise our discretion under Rule 2 to suspend the rules and hear defendant's appeal. I am particularly concerned given the extreme and fundamental nature of the error below.

### Criminal Contempt

In contempt proceedings, "the trial judge's findings of fact are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing on their sufficiency." *O'Briant v. O'Briant*, 313 N.C. 432, 436-37, 329 S.E.2d 370, 374 (1985). As always, however, the trial court's conclusions of law are reviewable *de novo* by the appellate courts. *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004).

North Carolina recognizes two types of criminal contempt: direct and indirect. According to North Carolina's criminal contempt statute, N.C. Gen. Stat. § 5A-13 (2003):

(a) Criminal contempt is direct criminal contempt when the act:

(1) Is committed within the sight or hearing of a presiding judicial official; *and*

(2) Is committed in, or in immediate proximity to, the room where proceedings are being held before the court; *and*

(3) Is likely to interrupt or interfere with matters then before the court.

(Emphasis added.) With direct contempt, the judge may summarily punish the contemnor following the procedures of N.C. Gen. Stat. § 5A-14 (2003), which permits "summary" contempt proceedings if they occur contemporaneously with the contemptuous act. The court is only required to give the person charged with contempt "summary notice of the charges and a summary opportunity to respond." *Id.*

Any criminal contempt other than direct criminal contempt is considered indirect criminal contempt. N.C. Gen. Stat. § 5A-13(b).

The court must then, prior to punishing the contemnor, follow the procedure specified in N.C. Gen. Stat. § 5A-15. N.C. Gen. Stat. § 5A-15 "provides for *a plenary hearing* for indirect contempt (and for certain direct contempt), and establishes, *inter alia*, requirements of notice and a hearing." *Cox v. Cox*, 92 N.C. App. 702, 706, 376 S.E.2d 13, 16 (1989) (emphasis added). Further, "[s]ince criminal contempts are crimes, one accused of criminal contempt must be afforded all appropriate procedural safeguards." *Id.*

In the present case, the trial court found defendant guilty of direct contempt and sentenced defendant in accordance with the summary proceedings described in N.C. Gen. Stat. § 5A-14. The record, however, unmistakably reveals that the judge himself neither saw nor heard the conduct that he was punishing. As the trial judge stated when confronting defendant, "the district attorney said that *while you were behind me where I couldn't see you* that you looked at her and—what did you say that he mouthed?" (Emphasis added.) The judge had to learn from others that which he did not directly observe himself.

The State urges us to apply N.C. Gen. Stat. § 5A-13(a)(1) to all actions that occur in the judge's presence, instead of limiting direct contempt to incidents that the judge actually sees and/or hears. The State cites no authority that supports such a construction of North Carolina's contempt statute. In fact, our Supreme Court has held that when "the court has no direct knowledge of the facts constituting the alleged contempt, in order for the court to take original cognizance thereof and determine the question of contempt, the proceedings must follow the procedural requirements as prescribed for indirect contempt . . . ." *Galyon v. Stutts*, 241 N.C. 120, 125, 84 S.E.2d 822, 826 (1954). *See also Cox*, 92 N.C. App. at 707, 376 S.E.2d at 17 (holding that a trial court must employ indirect contempt procedures when "[t]he trial judge had no direct knowledge of facts which would establish" acts of contempt).

If, as here, the trial judge did not see or hear the contemptuous conduct, but instead relied upon the reports of others, he necessarily does not have "direct knowledge" of the contempt. In short, the plain language of N.C. Gen. Stat. § 5A-13(a)(1) requires that an action occur within the actual sight or hearing of the trial judge before it may be the subject of summary contempt proceedings under N.C. Gen. Stat. § 5A-14. *See Groppi v. Leslie*, 404 U.S. 496, 504 n.8, 30 L. Ed. 2d 632, 639 n.8, 92 S. Ct. 582, 587 n.8 (1972) (observing that the Court "has been careful to limit strictly the exercise of the summary contempt

power to cases in which it was clear that all of the elements of misconduct were personally observed by the judge"); *Dorsey v. State*, 295 Md. 217, 226, 454 A.2d 353, 358 (1983) (holding that if the judge has no personal knowledge of some aspect of the contemptuous behavior and must fill in the gaps with evidence from an outside source, then direct contempt summary proceedings are not appropriate); *Ex Parte L.T. Wisdom*, 223 Miss. 865, 872, 79 So. 2d 523, 526 (1955) (holding that when the trial judge had no personal knowledge of the misbehavior occurring in the courtroom, but had to be informed of the misbehavior by the testimony of others, the trial court was not permitted to proceed summarily).

The facts of the present case illustrate why North Carolina's statutory contempt scheme requires that the trial court have personal knowledge of the allegedly contemptuous act before employing summary proceedings. Here, the judge's ruling was based on an unsworn statement by the prosecutor together with unsworn and unrecorded statements of attorneys in the courtroom who apparently were "willing to say or who have said" defendant mouthed a threat. Defendant's conviction is not based on what the judge knew to have happened, but rather on unsworn statements of courtroom observers taken on faith and not subject to cross-examination.

It is beyond argument that unsworn statements by counsel may not serve as evidence. *See, e.g., State v. Swimm*, 316 N.C. 24, 32, 340 S.E.2d 65, 71 (1986) (holding that "statements made by defense counsel during argument at the sentencing hearing do not constitute evidence in support of statutory mitigating factors"); *State v. Radford*, 156 N.C. App. 161, 164, 576 S.E.2d 134, 137 (2003) (holding that "trial courts cannot find an aggravating factor where the only evidence to support it is the prosecutor's mere assertion that the factor exists"). It is even more fundamental that a defendant may not be convicted on the basis of unsworn remarks of potential witnesses—in this case Mr. Kimel and his unnamed colleagues. *State v. Levy*, 200 N.C. 586, 587, 158 S.E. 94, 95 (1931) (noting that "the testimony of unsworn witnesses" is "illegal evidence").

In short, because the trial court had no personal knowledge of the acts and because of the trial court's summary proceedings, the record contains no evidence at all to support defendant's conviction. No court may convict a criminal defendant and deprive him of his liberty solely on the basis of unsworn statements, volunteered by unidentified individuals, that were made with little or no opportunity for cross-examination or rebuttal.

**IN RE ALEXANDER v. CUMBERLAND CTY. BD. OF EDUC.**

[171 N.C. App. 649 (2005)]

Since the trial judge did not have personal knowledge of defendant's allegedly contemptuous behavior, this case involves indirect contempt, requiring compliance with the procedural protections of N.C. Gen. Stat. § 5A-15. I would, therefore, reverse the trial court's decision and remand for further proceedings in accordance with N.C. Gen. Stat. § 5A-15.