STATE OF NORTH CAROLINA v. TYWAINE SHERELL DENNY

No. COA05-1419

(Filed 17 October 2006)

**1. Perjury— indigency affidavit—evidence not sufficient**

In North Carolina, perjury must be established by at least two witnesses, or by one witness with corroborating circumstances. Here, the State produced only one witness to testify directly to the falsity of defendant's statements on an affidavit of indigency in a child support case, and there was no independent corroborating evidence.

**2. Perjury— false material statement under oath—indigency statement—evidence not sufficient**

There was not sufficient evidence of a false material statement made under oath regarding indigency in violation of N.C.G.S. § 7A-456 where defendant indicated no real estate assets on the affidavit but his name was on a deed of trust with his girlfriend. The State's evidence did not sufficiently establish the falsity of defendant's statement; the affidavit does not ask whether the person owns any property, the State presented no evidence that defendant had any assets in the property, and there was no evidence that defendant failed to disclose any assets on the affidavit.

Judge STEELMAN dissenting.

Appeal by defendant from judgment entered 2 December 2004 by Judge James W. Morgan in Burke County Superior Court. Heard in the Court of Appeals 7 June 2006.

*Attorney General Roy Cooper, by Special Deputy Attorney General Donald R. Teeter, for the State.*

*Jarvis John Edgerton, IV for defendant-appellant.*

ELMORE, Judge.

Tywaine Denny (defendant) was indicted for one count of perjury in violation of N.C. Gen. Stat. § 14-209 and one count of false statements under oath in regard to his indigency status in violation of N.C. Gen. Stat. § 7A-456. Both charges were based upon an affidavit for indigency that defendant completed on 13 May 2003 with respect to paying child support dues. At trial, defendant testified that he came to court on 13 May 2003 in order to pay his child support obligation. Defendant stated that he applied for court appointed counsel that day by filling out an affidavit for indigency. Defendant placed a zero on the line of the affidavit next to the question asking for the value of any real estate assets he had. He testified that his girlfriend, Amber Clark, had put his name along with hers on a deed of trust for a piece of property she owned. But defendant stated that he had no financial interest whatsoever in the property. Ms. Clark testified that she purchased the property and borrowed money on her credit cards to fix it up to a livable condition. She stated that she put defendant's name on the deed due to her mother's false reports against defendant. According to Ms. Clark, the McDowell County Sheriff's Office advised her to place defendant's name on the deed to her property in order to protect him against a possible restraining order requested by Ms. Clark's mother. Ms. Clark stated that defendant understood that all the assets in the property were hers alone.

The State presented the testimony of two witnesses. Cathy Feimster testified that she was a DSS child support agent and also defendant's current case manager. She stated that she was not his case manager on 13 May 2003, however. Ms. Feimster explained what questions were contained on the affidavit for indigency. On cross-examination, she stated that the affidavit does not ask the applicant if he actually owns real estate; rather, it only asks about assets and liabilities with respect to real estate. George F. Goosmann testified that he is a real estate attorney and that one of his clients purchased a piece of property from defendant and Ms. Clark in February of 2004. The State submitted the deed of trust as an exhibit. Mr. Goosmann testified that defendant and Ms. Clark were the owners of record on the property. Mr. Goosmann stated that title was conveyed from defendant and Ms. Clark to his client on 19 February 2004, and that the proceeds from the sale went to Ms. Clark. The net proceeds were $56,769.12. Mr. Goosmann testified that he attempted to give a check to both defendant and Ms. Clark at the closing. Defendant informed Mr. Goosmann that he had no financial interest in the property and

that all proceeds should be given to Ms. Clark. Mr. Goosmann subsequently gave a check to Ms. Clark only.

The jury returned guilty verdicts on both counts. On 2 December 2004, the trial court entered judgment and consolidated the two offenses for sentencing. Defendant was sentenced to a minimum of 17 months and maximum of 21 months imprisonment. Defendant appeals.

**[1]** Defendant contends that there was insufficient evidence to support the offenses of perjury and false statements. He concedes that he failed to make a motion to dismiss at the close of all the evidence and has therefore not preserved this issue for appeal. *See* N.C.R. App. P. 10(b)(3). However, we determine that it would "prevent manifest injustice" to defendant to apply Rule 2 and review the issue on the merits. *See* N.C.R. App. P. 2. To survive a motion to dismiss in a criminal action, the State's evidence must be "substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). The trial court must view all evidence in the light most favorable to the State, including evidence that was erroneously admitted. *State v. Jones*, 342 N.C. 523, 540, 467 S.E.2d 12, 23 (1996).

The offense of perjury is defined as "a false statement under oath, knowingly, wilfully and designedly made, in a proceeding in a court of competent jurisdiction . . . as to some matter material to the issue or point in question." *State v. Horne*, 28 N.C. App. 475, 477, 221 S.E.2d 715, 716 (1976) (internal quotations omitted). "In a prosecution for perjury, North Carolina requires that the falsity of the oath be established by the testimony of at least two witnesses, or from the testimony of one witness, along with corroborating circumstances." *Id.* If the State relies upon the testimony of only one witness, then the falsity of the statement must be directly proved by the witness and there must be independent corroborating evidence of the falsity. *Id.*

Here, the State relied upon the testimony of Mr. Goosmann to establish the falsity of defendant's statement. Specifically, Mr. Goosmann's testimony tended to show that defendant was the co-owner of real property and that defendant failed to disclose this asset on his affidavit. But Mr. Goosmann also testified that the title search his office conducted of the real property would not reveal any debt on the property if it was not in the form of a lien. Thus, Mr. Goosmann did not know if Ms. Clark incurred credit card debt in fixing up the

property that would need to be paid off with the proceeds from selling the property. Mr. Goosmann also did not know whether defendant had contributed any monetary interest to the property because a title search does not reveal this either.

The State's other witness, Ms. Feimster, did not establish any direct evidence of false statements by defendant. Rather, she testified that she was not defendant's case manager in May 2003 and did not know whether defendant was asked to clarify any questions on the affidavit he submitted. Ms. Feimster testified on cross-examination as follows:

Q. Did Anybody ask [defendant] what he meant by putting down that he had no—zero interest in real property?

A. I do not know because he would have filed that with the clerk and I do not know what kind of questions they may have asked him.

As the State proffered only one witness to testify directly to the falsity of defendant's statements, we must consider whether there exists independent corroborating evidence of falsity. No evidence was presented that the property contained any equity in May 2003 or that defendant had any financial assets in the property.

Even when viewed in the light most favorable to the State, there is simply no independent corroborating evidence of the alleged falsity of defendant's statements on the affidavit for indigency. The State asserts on appeal that the fact that Ms. Clark received all of the proceeds from the sale of the property does not necessarily mean that defendant had no financial interest in the property. However, apart from the testimony of Mr. Goosmann, the State does not point to any evidence of defendant's financial assets in the property available in May 2003. As the State failed to present sufficient evidence of each element of perjury, the trial court erred in entering judgment on this offense.

[2] Next, defendant contends there was insufficient evidence of each element of his violation of N.C. Gen. Stat. § 7A-456, false statements. Section 7A-456 states that "[a] false material statement made by a person under oath or affirmation in regard to the question of his indigency constitutes a Class I felony." N.C. Gen. Stat. § 7A-456(a) (2005).

Here, the evidence in the record, even when viewed in the light most favorable to the State, fails to establish sufficient evidence of the falsity of defendant's statement. The affidavit of indigency asks

the person to list any assets he has in real estate. Notably, the affidavit does not ask whether the person owns any real estate. The State presented no evidence that defendant had any *assets* in the property he co-owned with Ms. Clark. Also, there is no evidence that defendant was asked by the clerk or another judicial official to clarify his answer to this question on the affidavit. The State presented the testimony of Ms. Feimster regarding the circumstances present when a defendant fills out an affidavit for indigency. She testified that a defendant in a child support action who claims indigent status would be required to fill out an affidavit prior to stating he is indigent under oath in court. She identified the affidavit completed by defendant in this matter as the routine form utilized by the courts. Ms. Feimster stated, on cross-examination, that she had no knowledge of the circumstances or what was said to defendant at the time the form was filled out. She simply read from the form during her testimony. Therefore, there is no evidence that defendant failed to disclose any assets on the affidavit. The State has failed in the instant case to proffer sufficient evidence of the offense of false statements in violation of N.C. Gen. Stat. § 7A-456. Accordingly, we hold that the trial court erred in entering judgment on defendant's conviction for false statements.

We hereby reverse defendant's convictions for perjury and false statements.

Reversed.

Judge McGEE concurs.

Judge STEELMAN dissents by separate opinion.

Judge STEELMAN dissenting.

I must respectfully dissent from the majority opinion.

I would not invoke the provisions of Rule 2 of the North Carolina Rules of Appellate Procedure to salvage defendant's appeal in this matter. The appeal should be dismissed as not being properly before this Court. *See* N.C. R. App. P. 10(b)(3) (2006).

The case of *State v. Buchanan*, 170 N.C. App. 692, 613 S.E.2d 356 (2005), involved the identical issue presented in this case. Defendant moved at the close of the State's evidence for dismissal. This motion was denied. Defendant failed to renew the motion to dismiss at the close of all of the evidence. This Court, relying upon the Supreme

Court decision in *State v. Dennison*, 359 N.C. 312, 608 S.E.2d 756 (2005), and *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 610 S.E.2d 360 (2005), declined to invoke Rule 2 and dismissed defendant's appeal.

I acknowledge that by its terms, Rule 2 is discretionary. *See State v. McCoy*, 171 N.C. App. 636, 639, 615 S.E.2d 319, 321 (2005). However, for the law to have any meaning or integrity, it must be applied in a consistent manner. If it is not, then it is being applied in an arbitrary and capricious manner, which can only bring disrepute upon the courts.

This case is distinguishable from the case of *State v. Johnston*, 173 N.C. App. 334, 338, 618 S.E.2d 807, 810 (2005), which found that the invocation of Rule 2 in that case was in "the public interest." Neither the defendant nor the majority opinion assert that this case is in "the public interest." *Id.*

I would dismiss the defendant's appeal in this matter, following the holding in the case of *State v. Buchanan*, 170 N.C. App. 692, 613 S.E.2d 356 (2005).